CHRISTOFFEL and another, Appellants, vs. WISCONSIN EMPLOYMENT RELATIONS BOARD and others, Respondents.

*May 19—June 16, 1943.*

336

*A. W. Richter* of Milwaukee, for the appellants.

For the respondent Wisconsin Employment Relations Board there was a brief by the *Attorney General, James Ward Rector,* deputy attorney general, and *Beatrice Lampert,* assistant attorney general, and oral argument by *Mrs. Lampert.*

FOWLER, J. The respondents, Nicholas Imp and Michael Bohachef, employees of the Allis-Chalmers Manufacturing Company, hereinafter referred to as "the company," were complainants in a proceeding before the Wisconsin Employment Relations Board, hereinafter referred to as "the board," in which the appellants, Harold Christoffel and Allis-Chalmers Workers' Union No. 248, United Automobile Workers of America, C. I. O., hereinafter referred to as "the union" or "Local 248," were charged with unfair labor practices. Christoffel is an employee of the company, and a member and president of the union, and a member of the bargaining committee of the union, and the union is the bargaining representative of the employees of the company under appointment of the National Labor Relations Board in proceedings previously before that board under the National Labor Relations Act. The complainants before the state board alleged that Christoffel and the union had engaged and were engaged in three unfair labor practices: (1) They had promoted and were conducting a strike at the West Allis plant of the company without a majority of the bargaining unit of the employees having by secret ballot voted therefor contrary to sec. 111.06 (2) (e), Stats. (2) They had orally and in writing attempted and were presently attempting to coerce, intimidate, and induce the company to discharge the complainants as employees and thereby to interfere with the enjoyment of their

legal right guaranteed by sec. 111.04 to refrain from joining or assisting the union, contrary to sec. 111.06 (2) (b). (3) They had intimidated the complainants by threatening them with bodily harm, by bringing false criminal charges against them, by injury and threatened injury to their persons and property, and had harassed and hindered them for their refusal to join or assist the union to the prejudice of their legal rights guaranteed by said sec. 111.04, contrary to sec. 111.06 (2) (a).

Upon hearing, the board found charge (1) not sustained and dismissed the complaint as to that charge. The board made no order in any way relating to or affecting the conduct of plaintiffs in connection with the strike. The board found charges (2) and (3) sustained, made cease-and-desist orders upon its findings, and directed affirmative action. The plaintiffs brought action in the circuit court for Milwaukee county to review the action of the board. The trial court affirmed the action of the board and entered judgment for enforcement of its order. From that judgment the plaintiffs have appealed.

To avoid confusion, Bohachef and Imp, the parties who instituted the proceedings before the board, will hereinafter be referred to as "complainants," and Christoffel and the union, who commenced the circuit court action, as the "plaintiffs."

The plaintiffs in effect make seven contentions: (1) The state board was without jurisdiction. (2) The provisions of sec. 111.04, Stats., declaring the right of employees to refrain from joining and assisting labor organizations is invalid. (3) The findings of fact of the board are not sustained by the evidence. (4) The board had no power to issue the order because the attempts of the plaintiffs did not effect coercion. (5) The orders are erroneous because the union is not bound by the acts of its members. (6) The cease-and-desist order is erroneous because indefinite. (7) The order of the board

violates the free-speech clause of the United States constitution. We will take up these contentions *seriatim*.

(1) (a) The plaintiffs objected before the board and before the court and here urge that the state board was without jurisdiction to entertain proceedings because the National Labor Relations Board had taken jurisdiction under the National Labor Relations Act of the matters here involved. Both the board and the court overruled this objection. This contention would seem to be sufficiently met by the rulings of this court in *Wisconsin Labor R. Board v. Fred L. Rueping L. Co.* 228 Wis. 473, 279 N. W. 673; *Hotel & R. E. I. Alliance v. Wis. E. R. Board,* 236 Wis. 329, 294 N. W. 632, 295 N. W. 634; *Allen-Bradley Local 1111 v. Wisconsin E. R. Board,* 237 Wis. 164, 295 N. W. 791, and the rulings of the supreme court of the United States in the two latter cases, 315 U. S. 437, 62 Sup. Ct. 706, 86 L. Ed. 946, and 315 U. S. 740, 62 Sup. Ct. 820, 86 L. Ed. 1154. In these cases it was held that there was no conflict of jurisdiction because proceedings between the interested adverse parties had been before the national board involving matters not in issue before the state board.

If this is not sufficient on the point of conflict of authority, reading of the national act, 49 U. S. Stats. at L. p. 449, 29 USCA, sec. 151 *et seq.,* shows that the national board has no jurisdiction of matters such as are involved in the instant proceeding. The powers of the national board as to unfair labor practices are limited by sec. 10 (a) of the act, 29 USCA, sec. 160 (a), to preventing, as in the act provided, "any person from engaging in any unfair labor practice (listed in sec. 8) affecting commerce." The matters comprised in the orders of the board in no way affected commerce. Sec. 8, 29 USCA, sec. 158, provides that "It shall be an unfair labor practice for an employer" to do certain specified things. Sub. (b) of sec. 10 provides that "Whenever it is charged that any person has engaged in or is engaging in any such unfair labor

practice" the board may proceed to hear the charge and if established, sub. (c), may make cease-and-desist orders or dismiss the proceedings as the facts found may require. There is no such thing under the national act as an unfair labor practice by employees, or any provision for investigation or determination of controversies between employees. The state act, however, sec. 111.06 (2), Stats., declares that "It shall be an unfair labor practice for an employee individually or in concert with others : (a) To coerce or intimidate an employee in the enjoyment of his legal rights, including those guaranteed in sec. 111.04 . . . or injure the . . . property of such employee;" and "(b) to coerce, intimidate or induce any employer to interfere with any of his employees in the enjoyment of their legal rights, including those guaranteed in sec. 111.04."

By sec. 111.04, Stats., employees are guaranteed the right to refrain from joining or assisting any labor organization.

Sec. 111.07, subs. (2) and (1), Stats., gives to any "party in interest" the right to file with the board a complaint in writing charging any person with having engaged in any specific unfair labor practice, and thereby submit any controversy concerning unfair labor practices to the board; and sub. (4) of the section empowers the board on hearing on such a complaint to make such findings as the facts in evidence warrant and to dismiss the complaint or enter such cease-and-desist orders and take such affirmative action as the facts found may require. It thus appears both that the state board did have, and the national board did not have jurisdiction of the matters here involved which comprise only unfair labor practices by employees and protection of some employees against interference by other employees with their legal rights through unfair labor practices of such other employees.

(1) (b) The plaintiffs in their petition for review lay as ground for reversal of the judgment of the court that since the hearing conducted by the state board the union and the

company have entered into an agreement with the approval of the Defense Mediation Board for the sole and exclusive adjudication of all matters that can possibly arise under "Finding 4" of the state board by means of a compulsory reference to Dean Lloyd K. Garrison as referee. Finding 4 merely states in effect that no agreement executed between the union and the company contains an "all-union" or "closed-shop" provision, and that there is no contract between them requiring that employees shall become or remain members of the union. It is not indicated by what authority the "Defense Mediation Board"—whatever it is and by whatever authority it is established—is empowered to render nugatory the orders of the state board or prevent their enforcement. But bypassing that, the record herein does not disclose that any such agreement as above stated was made or that if made such matters as are involved herein were to be referred. The decision of the circuit judge recites that the minutes of a meeting on May 2, 1941, of representatives of the union and the company, presided over by Dean Garrison as referee by appointment of the National Defense Mediation Board, and a report of the referee were considered by the court, but neither these minutes nor the report of the referee are in the record. The record before us consists of the summons and pleadings in the circuit court action, the written decision, findings and judgment of the circuit court, and the record of the proceeding before the state board. The certification of the board proceedings is dated March 13th, six weeks before the meeting was held at which Dean Garrison is stated to have been present as referee. The board's decision rested entirely on the record then certified. We cannot assume that the trial court was without jurisdiction to review the board's action or enforce its order because of occurrences subsequent to March 13th, or erred in its rulings respecting such occurrences when the record before us contains no evidence of any such occurrences.

(2) Plaintiffs' counsel contend that sec. 111.04, Stats., of the state act on which the instant proceeding is based is invalid because in conflict with.sec. 7 of the national act, 29 USCA, sec. 157. The wording of the two sections is identical except in two particulars : (a) The state act declares the right of employees to engage in "lawful concerted activities" referred to, while the national act does not contain the word "lawful." It certainly cannot be implied that under the national act any, activities but lawful ones may be engaged in. Thus the insertion of "lawful" in the state act raises no conflict. (b) The state act adds to the national act the following "and such employees shall also have the right to refrain from any or all of such activities."

As the national act says nothing at all respecting the right of employees to refrain from joining a labor organization or assisting in its activities, we see no conflict between the two acts. The state act, as above shown, merely declares certain activities of employees unfair labor practices and confers on the board jurisdiction of controversies between employees respecting those activities, while the national act makes no such declaration and confers on the national board no jurisdiction to entertain controversies between employees respecting such activities.

(3) The plaintiff's claim that none of the findings of fact of the board numbered 6 to 14, inclusive, which are set out in the margin [1] substantially as made, is sustained by the evidence. Perusal of the record of the proceedings before the

---

[1] The board's findings the plaintiffs claim are not supported by evidence are as follows :

Finding 6. It has been the policy of Local 248 and Christoffel as its president to endeavor to compel all employees of the company within the collective-bargaining unit to become members of the local.

Finding 7. To carry out said policy and for the purpose of coercing and intimidating employees of the company to co-operate with Local against their will, many members of the Local carried on a course of coercion and intimidation directed at complainants to

board shows that they are all amply sustained. These findings are made conclusive by the act if sustained by credible and competent evidence. Sec. 111.07 (7), Stats. The board

compel them to join the union and pay dues as a condition of retaining their employment with the company.

Finding 8. Commencing September, 1940, union officers and members contacted complainant Bohachef almost daily in an attempt to have him pay his back dues to the union, with accumulated penalties and thus be reinstated in good standing; and in many of these contacts Bohachef was threatened by officers and members acting in behalf of the union with loss of his job if he refused.

About a week prior to December 18, 1940, a group of union officers and members in an attempt by intimidation to compel him to become reinstated prevented him from leaving the plant of the company until after 1:30 in the morning by ganging up around the exit gates and putting him in fear of bodily harm.

Finding 9. On December 18, 1940, a group of members and officers of the union guarded the exit gates of the plant for the purpose of compelling him by fear of bodily injury and loss of his job to rejoin the union; that Bohachef quit work at 12:40 a. m. to avoid contact with various members who daily attempted to compel him to rejoin the union, zigzagged through the plant and met complainant Imp with whom he was to ride home in Imp's automobile in a washroom. The two complainants left the plant together shortly after 1 a. m. to go to the car, and were met by a group of union members stationed near the gate for the purpose of attempting to compel Bohachef to join the union. The group followed complainant to Imp's car. Complainants entered the car and locked the door. The members tried to open the door, cursed complainants, and one of them, Korp, stood in front of the car to prevent the moving of it. Imp started the car slowly and Korp got on the front bumper. Imp drove slowly until he came upon a car placed crosswise of the street by another member of the group. Imp then stopped, Korp got off the running board, Imp turned his car around and proceeded to the police station followed by another car containing members of the group. Stones were thrown at the car breaking the rear window, scattering glass inside it and denting the car body.

Finding 10. As a result of this incident Christoffel, as president and acting for the union, demanded of the company that it discharge the complainants as "disrupters," and that it had been the claim of the union and Christoffel that every employee of the company in the bargaining unit of which the union was the bargaining representative not a member of the union was a "disrupter" and as such subject to discharge by the company on request of the union under a rule of the company.

Finding 11. Imp never engaged in any activity in any way connected with the union or collective bargaining and has never en-

was the judge of the credibility of the evidence and we discover no incompetent evidence, or any claim of incompetency.

The board designated as conclusions of law from the facts specifically found set out in the margin that the plaintiff union was guilty of unfair labor practices—(a) By threatening the complainant Bohachef with bodily harm and both Bohachef and Imp with loss of their jobs, by assaulting the complainants while in their automobile, and by falsely accusing them of the commission of criminal offenses in order to coerce and intimidate them in their enjoyment of the right to freely select bargaining representatives of their own choosing or to refrain from any and all concerted activities for the purpose of collective bargaining. (b) By attempting to induce the company to interfere with its employees Bohachef and Imp by their discharge or discipline and thus to interfere with the right to select bargaining representatives free from any interference. These so-called conclusions of law were in effect findings of ultimate fact based on the previously stated find-

gaged in disrupting activities, but has only exercised his right to refrain from joining Local 248 and has affiliated with a rival A. F. L. union.

Finding 12. Bohachef never engaged in any activities connected with the local union or attempted to interfere with its activities except as he has forcefully expressed his right to refrain from rejoining the union or pay back dues when the union members have threatened or attempted to intimidate him.

[The word "forcefully" in this finding is not used as meaning using physical force. There is no evidence that Bohachef ever used such force."]

Finding 13. Christoffel and the union attempted to coerce and intimidate the complainants to join the union by falsely and without reasonable cause charging them with the criminal offense of attempting to kill or do great bodily harm to Korp by running him down with the automobile on the occasion of December 18 and by attempting to enforce prosecution of such charge by applying to the governor of the state to remove the district attorney of Milwaukee county and appoint a successor who would prosecute said charge.

Finding 14. That all of the said activities of appellants (plaintiffs) directed against the complainants were part of a plan to compel all of the employees of the unit of which the union is the bargaining unit to join Local 248.

ings of fact, some of which, notably Findings 8 and 9, were only findings of evidentiary matters, and on the basis of its findings made its order.

(4) The plaintiffs claim that the acts of plaintiffs banned by the judgment are not justified because their attempts did not succeed in compelling complainants to join the union and the act does not make mere attempts unfair labor practices but only successful attempts. The act does not say that only acts that are successful fall within its ban, and that is not to be implied. To give the act the construction contended for would render it ineffectual to protect employees against unfair labor practices. It would not lock the barn until after the horse was stolen. The law provides that any controversy concerning unfair labor practices may be submitted to the board and that any party in interest may complain. Sec. 111.07 (1) and (2), Stats.

(5) The contention that the union is not bound by such acts of its members as are here involved cannot be sustained. The plaintiffs in their brief cite cases to the effect that employers are bound by the acts of their supervising employees: *International Asso. of Machinists v. National Labor Relations Board,* 311 U. S. 72, 80, 61 Sup. Ct. 83, 85 L. Ed. 50; *H. J. Heinz Co. v. National Labor Relations Board,* 311 U. S. 514, 521, 61 Sup. Ct. 320, 85 L. Ed. 309; *National Labor Relations Board v. Link-Belt Co.* 311 U. S. 584, 599, 61 Sup. Ct. 358, 85 L. Ed. 368; *Phelps Dodge Corp. v. National Labor Relations Board,* 313 U. S. 177, 61 Sup. Ct. 845, 85 L. Ed. 1271. It is a poor rule that does not work both ways. Christoffel, president of the union, at least was in the same relation to the union as a supervising employee to his employer. It is said that the rule under the national act as to supervising employees rests on the public policy of that act. But it is as much the public policy of the instant act to protect employees against acts of fellow employees declared to be unfair labor practices as it is to protect them against unfair

labor practices by their employer. The ordinary rules of agency do not apply to the instant act just as they do not apply to the national act. Interference with the rights of complainants declared by the act by the union is the matter involved. It is said in *International Asso. of Machinists v. National Labor Relations Board, supra,* p. 80, that:

"The existence of that interference must be determined by careful scrutiny of all the factors, often subtle, which restrain the employees' choice and for which the employer may fairly be said to be responsible. Thus, when the employees would have just cause to believe that solicitors professedly for a labor organization were acting for and on behalf of the management, the board would be justified in concluding that they [employees] did not have the complete and unhampered freedom of choice which the act contemplates."

This was said of acts by employers but under the instant act it is applicable to acts of the union. The members of the union who "continuously solicited" the complainant Bohachef against his will to pay up his back dues and come into the union were obviously doing so for and on behalf of the union and those who did the other acts complained of were just as obviously so acting. And it is said in *Milk Wagon Drivers Union v. Meadowmoor Dairies,* 312 U. S. 287, 295, 61 Sup. Ct. 552, 85 L. Ed. 836:

"It is true of a union as of an employer that it may be responsible for acts which it has not expressly authorized or which might not be attributable to it on strict application of the rules of *respondeat superior.*"

Besides, the evidence shows that a steward and committeeman of the union participated in the continuous solicitation of Bohachef against his will to get him to pay his back dues and come back into the union. Christoffel, as president of the union, wrote the company demanding the discharge of Bohachef and Imp and under threat of a strike which was

subsequently voted by the union members. A committeeman of the union directed members of the union to be present when stones were thrown at the car in which Bohachef and Imp were sitting and their use of the street and their exit from the plant were obstructed. From all this the board might properly infer that the acts complained of were acts of the union and justified the cease-and-desist order.

(6) The cease-and-desist orders of the board and the court are claimed to be erroneous because they ban coercion and intimidation instead of specifically banning the specific acts that the board found the plaintiffs committed. We construe the judgment of the court as specifically banning those acts. The judgment of the court is what we are directly concerned with. The material portions of that judgment are set out in the margin.[1] It contains two provisions: (1) is a cease-and-

---

[1] The judgment of the circuit court orders that the plaintiffs "immediately cease and desist from:"

(1) A. Attempting to coerce or intimidate any of the employees of the Allis-Chalmers Manufacturing Company, including Michael Bohachef and Nicholas Imp, or either of them, either by continuous solicitation of membership if objected to, or by assaults, or by threats of bodily harm or of loss of their jobs, or by false accusations of the commission of criminal offenses, or by any other manner or in any other way, to enjoy or engage in, or refrain from, any or all of the following rights or activities: To freely select collective bargaining representatives of their own choosing, or to form, join or assist labor organizations, or to engage in lawful, concerted activities for the purpose of collective bargaining or other mutual aid or protection.

(1) B. Attempting in any way or in any manner to coerce, intimidate or induce the Allis-Chalmers Manufacturing Company, to interfere with the complainants, Bohachef and Imp, in the enjoyment, or exercise, of their said rights and activities above stated, or their right to refrain from any or all of such activities.

(2) Take the following affirmative action which the board finds will effectuate the policies of the Wisconsin Employment Peace Act:

A. Immediately post notices [in specified places] stating:.

That no employee [of the company] is required by law or by any collective-bargaining agreement to become or remain, or not to become or remain a member of . . . No. 248 or of any other organization in order to be entitled to retain employment with said company; that the employees of said company are guaranteed by

desist order; (2) grants affirmative relief. Part (1) contains two provisions, "A" and "B." (1) "A" applies to coercion and intimidation of the complainants to join the union and (1) "B" to coercion of the company to discharge complainants for refusal to join.

The thing from which the complainants are interested in requiring the plaintiffs to cease and desist is interference with their legal right not to join the union by doing the acts specified in (1) "A". and "B." The order might well have limited its ban to those matters, but it is of no moment that by its language it bans the plaintiffs from interference with complainants' right not to assist the plaintiffs in their activities or with the free selection, by the complainants of collective-bargaining representatives or to form or assist other organizations. Manifestly the plaintiffs have no right to do any of these things. This added provision does no harm to the plaintiffs and because not prejudicial may be ignored.

---

law the right to freely choose such bargaining representative as the employees see fit and the right to refrain from any collective bargaining activities; that [the union] will refrain from interfering, or attempting to interfere, with such rights of the individual employees of the company, and will not coerce or intimidate, or attempt to coerce or intimidate any employees of the company by threat of bodily harm, loss of his job, or in any other manner in order to compel, or seek to compel, any such employees against their will to join or assist said union, Local No. 248; and that the union will refrain from attempting to coerce, intimidate or induce the [company] to interfere with any of its employees in the enjoyment of their legal right to associate with labor organizations of their own choice or to refrain from such association; and that said union will not demand of the company the discharge of employees for failing to join or to maintain membership in such union, for engaging in any union activity they may see fit off the premises of said company, or for joining and assisting any other labor organization.

B. Notify the board in writing . . . that they have taken the necessary steps to comply with this order.

It is further adjudged and decreed that [the union] and Harold Christoffel and the officers, members and agents of such union shall cease and desist, shall take affirmative action, and shall notify the Wisconsin Employment Relations Board in the respects and manner . . . set forth in the order of said board.

It is urged that (1) "A" is too broad because it applies to employees of the company other than the complainants Bohachef and Imp. As "A" covers only unlawful acts and restrains no lawful acts, the inclusion of employees other than Bohachef and Imp does not harm the plaintiffs and not being prejudicial may be ignored. But it further appears from the record that the attorneys for Bohachef and Imp at the commencement of the hearing before the board moved to make "a number of men" on their request parties to the proceeding. The board has power to bring in additional parties, sec. 111.07 (2) (a), Stats., and the board granted the motion, although we do not find the list of the names of the persons added. Manifestly, however, they were employees of the company. This warranted banning the plaintiffs from interfering with the rights of employees other than the complainants in the cease-and-desist order, and the order as a whole was proper under sec. 111.06 (2) (a).

Provision "A" of part (1) of the judgment required the plaintiff union and its members specifically to cease and desist from doing the following acts in attempting to coerce or intimidate employees of the company to join the union, all which members of the union had done to Bohachef and Imp or one of them: (1) Continuously soliciting employees to join the union over their objection; (2) assaulting them or threatening them with bodily harm; (3) threatening them with loss of their jobs; (4) falsely accusing them of commission of criminal offenses. Inferentially by its general language "or in any other manner," the judgment also required the union and its members not to (5) obstruct the exit of employees from the plant, or (6) the street adjacent to the plant to interfere with the passage of employees, and (7) not to injure their property. The things banned by (2), (5), (6), and (7) above stated have been held within the power of the board to prohibit in the cases cited under (1) (a), *supra;* and (3) was held valid in *Wisconsin E. R. Board v. Milk, etc.,*

*Union,* 238 Wis. 379, 299 N. W. 31, of which the supreme court of the United States refused jurisdiction on *certiorari;* and in *Retail Clerks' Union v. Wisconsin E. R. Board,* 242 Wis. 21, 6 N. W. (2d) 698. In this case it is said at page 36 of the opinion that "a man may be coerced into doing or refraining from doing by fear of loss of his business or wages as well as by the dread of physical violence or force." This manifestly covers attempts to coerce Bohachef by threat of loss of his job. As to (1) while no cases have held that the specific acts of continuous solicitations to join the union against objection is an unfair labor practice, the continuous and persistent solicitations of Bohachef harassed and hindered him in the enjoyment of his legal right not to join the union. It was done for the purpose of so harassing, annoying, and persecuting him as to cause him eventually to join the union against his will rather than endure it. The board might rightly so infer from the evidence. Such solicitations tend to provoke breaches of peace by violence. They destroy the right of the persecuted employee to pursue his work in peace, and frustrate the declared purpose of the act to promote "industrial peace," sec. 111.01, Stats., and peaceful relations between employees as well as between employer and employees.

As to (4) no case has yet held that false accusation of a criminal offense and institution of a criminal prosecution is such a practice. But both these acts were unlawful. And as held in the *Retail Clerks' Union Case, supra,* and as indicated in *American Furn. Co. v. I. B. of T. C. & H. of A., etc.,* 222 Wis. 338, 379, 268 N. W. 250, the terms of an act "cannot be stretched to permit a union to enforce by picketing demands which the employer may not lawfully accede to." This applies as well to coercion by employees as by employers and as to coercion by other means as well as by picketing.

Part "B" of part (1) of the judgment required the plaintiffs to cease and desist from attempting to coerce the company to interfere with complainants Bohachef and Imp in the

exercise of their right to refuse to join the union or refrain from the other activities mentioned in "A." That the board had power to do this was directly held in the *Retail Clerks' Union Case, supra,* and was inferentially held in *American Furn. Co. v. I. B. of T. C. & H. of A., etc., supra,* where it is said as above quoted, and under the instant act an employer may not in absence of a "closed-shop" contract lawfully discharge an employee because he will not join a union.

It is urged that the general application of the cease-and-desist provisions of (1) to ban coercion or intimidation "by any other manner or in any other way" is too broad, but we think not. Attempts by peaceful persuasion to solicit membership in the union or assist the union in its collective-bargaining or other lawful activities is not banned. It is also urged that the terms "coercion" and "intimidation" are so indefinite and uncertain in meaning that employees will not know what acts are and what are not banned. We do not ascribe ignorance and stupidity to the members of labor unions. We consider they will without difficulty be able to determine whether their acts done and statements made to induce membership and assistance in union activities are merely persuasive and peaceful or threaten injury if the requests made are not granted and therefore coercive or intimidating. In the *Fred L. Rueping L. Co. Case, supra,* it is said (p. 496) :

"The distinction between the exercise by an employer of his right of freedom of speech and the actual use of the spoken word as an instrumentality to overpower the will of employees is well understood, and constitutes the dividing line between what an employer may do and what he may not do."

The same may be said under the instant act as to what an employee may and may not do. Employees are as well able as employers to draw the dividing line. To hold otherwise would impute to employees lack of intelligence which ordinary employers are assumed to possess.

Part (2) of the judgment is also of two parts.  It requires the plaintiffs "A" to post notices, and "B" to notify the board of compliance with the order.  "A" specifies that the notices must inform the reader that the complainants have specified rights, and that the plaintiffs and the members and agents of the union are banned from interference with those rights. These provisions appear in the margin and will not be here further particularized.  It is especially urged that the notices bar the plaintiffs and members of the union from exercise of their right of free speech guaranteed by the United States constitution.  This point is discussed in connection with (7).

As to the affirmative action required by the judgment, the board found it would "effectuate the policies of the act." Sec. 111.07 (4), Stats., provides that the board may require "the person complained of . . . to take such affirmative action . . . as the board may deem proper."   The finding that the action required would effectuate the purposes of the act indicates that the board deemed the action ordered proper, and whether the action ordered was appropriate to effectuate the purposes of the act was for the board to decide.   In *National Labor Relations Board v. Link-Belt Co., supra,* it is said (p. 600) :

"The board [National], not the courts determines under this [the] statutory scheme how the effect of unfair labor practices may be expunged."

So of the state board.  We consider that the affirmative action ordered was justified.

(7) Contention is made that the judgment of the circuit court violates the free-speech provision of the United States constitution as construed in *Thornhill v. Alabama,* 310 U. S. 88, 60 Sup. Ct. 736, 84 L. Ed. 1093.  We consider that the previous decision of this court and decisions of the supreme court of the United States subsequent to the *Thornhill Case*

take the instant case without the rule of the *Thornhill Case.* The same kind of acts as are here involved were involved in cases that have been decided by this court and been affirmed. The instant case involves violence and injury to property and threats thereof as in the *Hotel & R. E. I. Alliance* and *Allen-Bradley Local 1111 Cases, supra.* It involves such acts as were involved in *Wisconsin E. R. Board v. Milk, etc., Union, supra,* obstruction of entrance of street, economic pressure by threats, and loss of earnings, of which the supreme court of the United States refused jurisdiction, and of such acts as were involved in the *Retail Clerks' Union Case, supra.* While peaceful persuasion to join a union and join in its lawful activities is permissible, concerted action by unions may be exerted only for lawful purposes. When such action is exerted for an unlawful purpose the free-speech provision affords no protection. *Carpenters' & Joiners' Union v. Ritter,* 315 U. S. 722, 62 Sup. Ct. 807, 86 L. Ed. 1143, inferentially so indicates; and it is definitely so held in *Retail Clerks' Union Case, supra.* It is also indicated in *American Furn. Co. Case, supra,* page 367, of the Wisconsin opinion. We perceive no need to add to the discussion of the subject of free speech given in the *Retail Clerks' Union Case, supra.*

*By the Court.*—The judgment of the circuit court is affirmed.