WISCONSIN EMPLOYMENT RELATIONS BOARD, Appellant, vs. ALGOMA PLYWOOD & VENEER COMPANY, Respondent.

*April 14—May 11, 1948.*

550

For the appellant there were briefs by the *Attorney General, Stewart G. Honeck,* deputy attorney general, and *Beatrice Lampert,* assistant attorney general, and oral argument by *Mrs. Lampert,* and by *Donald J. Martin* of Milwaukee, attorney for Victor Moreau.

For the respondent there was a brief by *Whyte, Hirschboeck & Minahan* of Milwaukee, and oral argument by *Roger Minahan.*

A brief was filed by *Padway, Goldberg & Previant* of Milwaukee, on behalf of the United Brotherhood of Carpenters & Joiners Local No. 1521, A. F. L., as *amicus curiæ.*

WICKHEM, J.   The company is a manufacturing concern operating in the city of Algoma and having approximately six

hundred fifty production workers. In 1942, the union was designated as bargaining agent by a majority of the company's employees in an election conducted by the National Labor Relations Board. Since that time it has entered into contracts with the company concerning wages, hours, and working conditions. On April 5, 1946, a contract was executed which contains the following provision:

"All employees who, on the date of the signing of this agreement, are members of the union in good standing in accordance with the constitution and by-laws of the union, and those employees who may thereafter become members shall, during the life of the agreement as a condition of employment, remain members of the union in good standing."

This provision had been inserted in the 1943 contract and was included in all contracts thereafter negotiated. It was inserted in the 1943 contract upon the recommendation of a federal conciliator in accordance with an alleged policy of the War Labor Board but no directive of this board was ever issued requiring the inclusion of such a provision. It was the practice in enforcing the provision for the union to notify the company of delinquencies on the part of any employee in respect of his dues. The company would then interview the delinquent employee and take whatever steps were necessary to restore his membership to good standing and failing that would discharge him.

The employee began to work for the company steadily in October, 1945, but had been employed from time to time prior to that time. On one occasion in 1944 he had been reported by the union as delinquent and ordered to leave work but he paid his dues and was restored to this job. Thereafter he maintained his membership until early in 1947 when he received a notice from the union stating that he was in arrears and that if he was not paid up within a week that would "be your last day at work and you will also be fined $1." He did not pay his dues and was ordered to report to the vice-president

of the company. He there stated that he would quit before he would pay and indicated dissatisfaction with the union. He was then discharged.

Upon these facts the board ordered that the company cease from encouraging membership in the union by any discrimination in respect of the hire or tenure of its employees or by requiring as a condition of employment that any employee become or remain a member of the union unless and until the employees shall have approved such provision by referendum under sec. 111.06 (1) (c), Stats. The company was required to take the following affirmative action: (1) Reinstate employee; (2) pay employee a sum of money equal to the amount he normally would have earned in wages during the period from his discharge to the date of the company's order of reinstatement, less earnings he may have had during such period; (3) post the usual notices; (4) notify the board within five days of the steps taken to comply with the order.

Thereafter, on November 5, 1947, the board petitioned the circuit court for enforcement of its order and the judgment in this case reversed that portion of the order requiring the company to make the employee whole for loss of pay. Otherwise the order was confirmed and enforced. Both union and employer contend that the board was without jurisdiction for the reason that the National Labor Relations Board in supervising the election for bargaining agent and certifying the union as such had so intervened in the labor relations of the company as to oust the Wisconsin board of jurisdiction.

As pointed out in *Allen-Bradley Local 1111 v. Wisconsin E. R. Board,* 237 Wis. 164, 171, 295 N. W. 791, we are again confronted with a question of delicacy and difficulty concerning "the delimitation of the power of the state and the federal government over a matter which is subject to some extent to their concurrent jurisdiction." See also *International B. of E. W. v. Wisconsin E. R. Board,* 245 Wis. 532, 15 N. W. (2d) 823. The question first came before this court in *Wisconsin*

*Labor R. Board v. Fred Rueping L. Co.* 228 Wis. 473, 480, 279 N. W. 673. At that time there was in force in this state a Labor Relations Act substantially identical in all important respects with the Wagner Act. The question was whether the Wisconsin board had jurisdiction to consider and to determine proceedings initiated under the Wisconsin act by employees charging unfair labor practices on the part of an employer. This court held that the state had power to regulate labor relations in the interest of the peace, health, and order of the state and that the federal government had the power to "regulate this relationship to the extent that unregulated it tends to obstruct or burden interstate commerce." It was conceded that in the field where there was an overlapping of jurisdiction the federal power was supreme and that the federal statute could pre-empt this field. It was held, however, that the National Labor Relations Act had not pre-empted the field and in view of the discretion in the National Labor Relations Board to take or to refuse jurisdiction in accordance with its determination whether the situation proximately affected interstate commerce it was held that the state was ousted of jurisdiction only where there was an administrative conflict created by the intervention of the National Labor Relations Board. It was unnecessary to determine what the situation might be if the state act had been in any way repugnant to the policy and purposes of the national act. The *Rueping Case, supra,* did not involve any intervention by the National Labor Relations Board and this court did not consider what would constitute such an administrative intervention by the national board as would oust the Wisconsin board of jurisdiction. The *Allen-Bradley Case, supra,* arose under the Wisconsin Employment Peace Act which was different in several important particulars from the so-called Little Wagner Act. Among other things it defined unfair labor practices by employees and in several other respects departed from the provisions of the former statute. It was contended in the *Allen-Bradley Case, supra,* that

the Wisconsin Employment Peace Act was repugnant to the purpose and policy of the National Labor Relations Act and that for that reason it could not be enforced in the face of the federal enactment. It was held that at least so far as unfair labor practices by employees were concerned the Employment Peace Act covered a field not dealt with by the national act or within the jurisdiction of the National Labor Relations Board and that there was no conflict fatal to the jurisdiction of Wisconsin. It was intimated that mere repugnancy in the language of the two acts did not go to the matter of jurisdiction and that there could be no conflict even in such a situation until it was attempted to apply them to the same labor dispute. The *Allen-Bradley Case* was appealed to the United States supreme court and was affirmed. *Allen-Bradley Local v. Wisconsin E. R. Board,* 315 U. S. 740, 62 Sup. Ct. 820, 86 L. Ed. 1154. The opinion was put upon quite narrow grounds and the court deliberately avoided the question whether the Wisconsin view that jurisdiction was wholly dependent upon administrative conflict was valid. It was held, however, that a state law so construed and applied as to delete, impair, or defeat the rights declared by the National Labor Relations Act would be unconstitutional, but it was held that the court would not consider the state act as a whole but rather the parts of it applied in the case involved and that the conflict with the federal act must be found in those very parts. It was held that since the federal act did not govern employer-union activity of the type involved in the *Allen-Bradley Case, supra,* the portions of the Wisconsin act under attack constituted a valid exercise of jurisdiction. It was stated that if the order of the state board had affected the status of employees or caused a forfeiture of collective-bargaining rights a different question would arise.

We now come to the case of *Bethlehem Steel Co. v. New York State L. R. Board,* 330 U. S. 767, 770, 773-776, 67 Sup. Ct. 1026, 91 L. Ed. 1234. That case dealt with a situation in which the New York State Labor Relations Board had

permitted foremen to organize to constitute a collective-bargaining unit. The question whether foremen should consistently with the policy of the national act be organized as a bargaining unit had had various solutions by the national board. In the beginning it had recognized the rights of the foremen and "later, there was a period when, for policy reasons but without renouncing jurisdiction, it refused to approve foremen organization units." The application of the foremen to the state board was the result of this policy on the part of the national board. Later during the pendency of the case in the courts of the state of New York the supreme court in *National L. R. Board v. Packard Motor Car Co.* 330 U. S. 485, 67 Sup. Ct. 789, 91 L. Ed. 1040, had held that the national act entitled foremen to the rights of self-organization under the act. The court in the *Bethlehem Case, supra,* follows the decision in the *Allen-Bradley Case, supra,* to the effect that in the national act congress has "sought to reach some aspects of the employer-employee relation out of which such interferences arise. . . . Where it leaves the employer-employee relation free of regulation in some aspects, it implies that in such matters federal policy is indifferent, and since it is indifferent to what the individual of his own volition may do we can only assume it to be equally indifferent to what he may do under the compulsion of the state," citing the *Allen-Bradley Case, supra.* It was held, however, following the case of *Hill v. Florida,* 325 U. S. 538, 65 Sup. Ct. 1373, 89 L. Ed. 1782, that "the power of the state may not so deal with matters left to its control as to stand 'as an obstacle to the accomplishment and execution of the full purposes and objectives of congress.'" The court concluded that where congress had implemented the act by the delegation of rule-making power to an administrative body and where that body in the exercise of its delegated power has adopted a rule of policy the state power is abrogated at least so far as the subject matter of the rule is concerned. While the

state regulation in some fields may be invalid even though a particular phase of the subject has not been covered by rule it was held that where the measure in question relates to what might be considered a separate or distinct segment of the matter, the states are generally permitted to exercise their police power as to the matters omitted by the administrative rules. It is said, however, that "the conclusion must be otherwise where failure of the federal officials affirmatively to exercise their full authority takes on the character of a ruling that no such regulation is appropriate or approved pursuant to the policy of the statute." The court points out that the failure of the National Labor Relations Act to entertain the foremen's petitions was of the latter class; that the board had never denied its jurisdiction over the petitions and had made it clear that its refusal to designate foremen's bargaining units "was a determination and an exercise of its discretion to determine that such units were not appropriate for bargaining purposes." The court then says:

"The state argues for a rule that would enable it to act until the federal board had acted in the same case. But we do not think that a case-by-case test of federal supremacy is permissible here. The federal board has jurisdiction of the industry in which these particular employers are engaged and has asserted control of their labor relations in general. . . . We do not believe this leaves room for the operation of the state authority asserted." (p. 776.)

This court was called upon in *International Union v. Wisconsin E. R. Board*, 250 Wis. 550, 567, 27 N. W. (2d) 875, 28 N. W. (2d) 254, to appraise the effect of the *Bethlehem Case, supra*. We there concluded that the *Bethlehem Case, supra*, had simply held that the National Labor Relations Board in the instant case "had exercised the jurisdiction delegated to it under the federal act by declining to designate the foremen as a bargaining unit. The declination was an exercise of its jurisdiction, just as much

as granting it would have been." We adhere to this determination. The *Bethlehem Case, supra,* has limited the case-by-case doctrine commonly attributed to the Wisconsin decisions only to the extent of holding that where there has been a valid general exercise of its administrative power by the National Labor Relations Board neither repugnant provisions of the state law nor repugnant policies of the state board are effective to defeat the purpose and policy of the exercise. See "The Taft-Hartley Act and State Jurisdiction Over Labor Relations," Russell A. Smith, 46 Michigan Law Review, pp. 593, 609, where in commenting upon the *Bethlehem Case, supra,* it is said:

"On its facts the case is easily understood simply as an application of the doctrine that state regulation cannot be permitted to frustrate national policy—in this situation a policy definitely adverse to foremen unionization, not merely neutral in the matter."

We next consider the consequences of the fact that the union here had been certified as a collective-bargaining unit by the National War Labor Board. This circumstance was not present in the *Rueping* or *Allen-Bradley Cases, supra,* or *Hotel & R. E. I. Alliance v. Wis. E. R. Board,* 236 Wis. 329, 294 N. W. 632, 295 N. W. 634. In the *International B. of E. W. Case, supra,* the National Labor Relations Board had dismissed a petition for investigation and certification of bargaining representative and we there held that the board had not taken jurisdiction. *International Union v. Wisconsin E. R. Board, supra,* involved a question of unfair labor practices by employees who were members of a union which had been certified as a bargaining unit by the National Labor Relations Board. This case also involves such a certification and the question is whether there was such an intervention by the national board as even under the doctrine of the *Rueping Case, supra,* would oust the state and the state board of all jurisdiction concerning the employment relations

of this company. We assumed a negative answer in the *International Union Case, supra,* without any discussion of the point. Upon consideration we adhere to the view that the mere certification of a union as a bargaining unit in a particular plant is not such a general assumption of jurisdiction over all of the employment relations of the company as would oust the state board of all jurisdiction. We refrain from expressing any opinion as to the extent to which it does oust the state board in the field that might be regarded as collective bargaining. In other words the question reserved by the United States supreme court in the *Allen-Bradley Case, supra,* as to the consequences there had the board's order effected a forfeiture of collective bargaining rights will not be discussed because it is not involved. It remains to be considered, however, whether the fact that the contract was originally entered into as a result of collective bargaining supervised by the National War Labor Board and the clause under attack here inserted at the recommendation or insistence of a conciliator of the board and in accordance with a general policy not formalized by rule or directive brings the case within the rule of the *Bethlehem Case, supra,* as we have construed it. The question presents some difficulty but we have concluded that it does not have this effect. In *International B. of E. W. Case, supra,* this court held that sec. 8 (3) of the national act, 29 USCA, sec. 158 (3), had not validated or authorized an all-union agreement. As we construed the statute in the light of its language and the committee report accompanying it the section simply makes it clear that an all-union contract negotiated by a representative of the employees is not repugnant to the purposes of the national act. It was not intended to interfere with the policy of the various states in respect of closed-shop and all-union agreements. Under the circumstances we are of the opinion that there was not delegated to either the War Labor Board or to the National Labor Relations Board any jurisdiction to declare a policy in respect of

maintenance of membership, closed shop or all-union shop and that even if the War Labor Board had issued a formal direc-tive it would be *ultra vires* the board and have no effect upon the jurisdiction of the Wisconsin board, unless, indeed, it fell within some aspect of the war power, a matter which we have not investigated and which is not briefed but which is not material for the reason that the contract was renegotiated after the war powers, if any there were, had ended. In con-nection with this point, see *International B. of P. M. v. Wisconsin E. R. Board,* 245 Wis. 541, 15 N. W. (2d) 806.

The next question has to do with the portion of the orders requiring the employer to make the employee whole for loss of pay resulting from his discharge. The trial court held that in this case the board abused its discretion and ordered the provisions for back pay to be deleted from the order. The statute involved is sec. 111.07 (4), Stats., which authorizes the board to take the following remedial action:

". . . Final orders may . . . require the person com-plained of to cease and desist from the unfair labor practices found to have been committed, . . . and require him to take such affirmative action, including reinstatement of employees with or without pay, as the board may deem proper. . . ."

It was held by this court in *Folding Furniture Works v. Wisconsin L. R. Board,* 232 Wis. 170, 182, 285 N. W. 851, 286 N. W. 875, in the course of reversing an order held to be excessive in amount that "we consider that requiring an offer to reinstate the men was proper, and an order for payment of a reasonable amount of back pay, to those who accepted the offer, based upon what was deemed necessary to 'effectuate the policies' of the act, would have been proper." It was further stated that the order for back pay is not a reward to employees but is penal and remedial for the purpose as stated by the United States supreme court in *Consolidated Edison Co. v. National L. R. Board,* 305 U. S. 197, 236, 59 Sup. Ct. 206, 83 L. Ed. 126, of "removing or avoiding the conse-

quences of violation where those consequences are of a kind to thwart the purposes of the act." In the *Folding Furniture Works Case, supra,* the award was reversed because it involved many employees and the enormity of the award would tend to bankrupt the employer rather than to induce compliance with the act.

We deal here with a matter committed by statute to the discretion of the board and in order to reverse we must find that the order had no reasonable tendency to effectuate the purposes of the act. In this connection see *Christoffel v. Wisconsin E. R. Board,* 243 Wis. 332, 10 N. W. (2d) 197; *Appleton Chair Corp. v. United Brotherhood,* 239 Wis. 337, 1 N. W. (2d) 188. We are of the view that this cannot be said. A great deal of emphasis is laid by the employer upon the fact that it acted under a certain degree of compulsion in putting the questioned clause into the contract; that in order to conduct its business without labor troubles it was prudent to yield to the demand of the union which was supported by the federal conciliator. It must be at once apparent, however, that if that operates as such a complete excuse for committing an unfair labor practice as to make the ordering of back pay improper, the employer may in the future yield with impunity to such pressures. What the board has done is to impose such penalty as would in its judgment be likely to retard the employer's inclination to yield to this compulsion in the future. We cannot say that the board might not reasonably consider that its action would tend to effectuate the policy of the act. It is also contended that it is unfair to visit the entire consequences of the situation upon the employer. However, the term "back pay" in its ordinary sense and as used in the statute clearly indicates that its source is the employer and that it is not an appropriate penalty to visit upon the union. We think that this objection is without validity.

It follows that the judgment of the trial court should be affirmed in so far as it sustains the jurisdiction of the board,

and reversed with directions to enforce the portion of the board's order dealing with back pay.

*By the Court.*—Judgment affirmed in part and reversed in part, and cause remanded for the entry of judgment in accordance with the opinion.