Wisconsin Employment Relations Board, Respondent, vs. Gilson Brothers, Appellant.

*June 9—July 12, 1949.*

For the appellant there were briefs by *Schanen, Schanen & Pauly* of Port Washington, and *O. S. Hoebreckx* of Milwaukee, and oral argument by *Mr. E. W. Pauly* and *Mr. Hoebreckx.*

For the respondent there was a brief by the *Attorney General, Stewart G. Honeck,* deputy attorney general, and *Beatrice Lampert,* assistant attorney general, and oral argument by *Mrs. Lampert.*

BROADFOOT, J.    The complaints alleged that three employees of the company had been discharged for the sole reason that they had been engaging in proper union activities and that said discharges were for the purpose of discouraging employees of the company in the exercise of their right to join and become members of the complainant union.    The com-

pany denied the charges contained in the complaints and contended that the three employees were discharged because they were indolent and insolent, refused to perform customary productive work and spent a large part of their time in unproductive activity. After the hearing the Wisconsin Employment Relations Board issued the order that was confirmed by the judgment.

The board found that Gilson Brothers is a Wisconsin corporation, engaged in the manufacture and sale of various types of road machinery at Fredonia, Wisconsin; that Donald Schoedel was employed by the company on the 15th day of December, 1947, as an assembler and continued in such employment until the 21st day of July, 1948, at which time he was discharged; that Arthur Himes and Theophilus Ottenbacher were each employed by the company on the 8th day of March, 1948, and continued in such employment until the 24th day of July, 1948, when they were discharged; that all of such discharges were without cause and were solely for the reason that said employees had engaged in attempting to organize the employees of the company and to induce such employees to engage in lawful concerted activities for their mutual aid and protection and to become members of the complainant labor organization.

As a conclusion of law it was determined that the company had engaged in unfair labor practices within the meaning of secs. 111.06 (1) (a) and 111.06 (1) (c), Stats., by interfering with, restraining, and coercing its employees in their right to engage in said activities and by discouraging or attempting to discourage membership in the complainant organization. By the order of the board the company was required to cease and desist from such unfair labor practices, to reinstate Schoedel, Himes, and Ottenbacher to their former positions, and to compensate them for any loss of pay sustained by them.

At the hearing in the circuit court the company contended

that the order of the board should be dismissed for the reason that the National Labor Relations Board has exclusive power to regulate the activities sought to be regulated by the state board in this proceeding as the company is engaged in interstate commerce, and for the further reason that the policy and procedure of the National Labor Relations Act differ from the policy and procedure of the Wisconsin Employment Peace Act. The same contention is made before this court.

The question of jurisdiction was not raised at the hearing before the Wisconsin Employment Relations Board except that upon its petition to the board for leave to adduce additional testimony the company indicated that as part of the additional testimony it wished to show that the employer was engaged in interstate commerce. It also contended before the circuit court, and contends here, that if the jurisdictional facts were not properly before the board and the circuit court, the company's request for leave to adduce additional evidence should have been granted.

The question of the jurisdiction of the board is not new. It has been presented many times in this court in cases arising under the provisions of the Wisconsin Employment Peace Act. In this case the record shows that the company is a Wisconsin corporation, conducting its manufacturing operations in Wisconsin, with Wisconsin employees. There is nothing in the record to indicate that the National Labor Relations Board had ever accepted or attempted to exercise jurisdiction in a matter affecting the company or its employees, or that any petition has ever been filed requesting it to so act. Under the law as established by prior decisions of this court the Wisconsin Employment Relations Board had jurisdiction. *Wisconsin Labor R. Board v. Fred Rueping L. Co.* 228 Wis. 473, 279 N. W. 673; *Allen-Bradley Local 1111 v. Wisconsin E. R. Board,* 237 Wis. 164, 295 N. W. 791; *International B. of E. W. v. Wisconsin E. R. Board,* 245 Wis. 532, 15 N. W. (2d) 823; *International Union v.*

*Wisconsin E. R. Board,* 250 Wis. 550, 27 N. W. (2d) 875, 28 N. W. (2d) 254; *Wisconsin E. R. Board v. Algoma P. & V. Co.* 252 Wis. 549, 32 N. W. (2d) 417.

The final contention made is, in effect, that the court abused its discretion in refusing to remand the controversy to the board in order to permit the company to adduce further evidence as provided by sec. 111.07 (7), Stats., which reads in part as follows:

"The court may, in its discretion, grant leave to adduce additional evidence where such evidence appears to be material and reasonable cause is shown for failure to have adduced such evidence in the hearing before the board."

At the hearing on the question of adducing further evidence, the company stated that it then had certain of its employees available to contradict the testimony of the discharged employees. Apparently they were employees at the time of the hearing before the board and their testimony was available then. It also wanted to prove by its president that the trend of its business was downward and some employees would have to be laid off, that the three who had been discharged were among those most recently employed and they would by custom be the first to be eliminated from the pay roll. The condition sought to be described had arisen after the date of the discharge of the three men, and was not material to a determination of the controversy as of that date. It also sought to show through its president that it was engaged in selling most of its product in interstate commerce and that it bought a high percentage of its materials and supplies from out-of-state sources. This evidence was also available at the time of the hearing before the board, and no reasonable cause was shown for failure to introduce it at that time. From the record we find that the court did not abuse its discretion in holding as it did.

*By the Court.*—Judgment affirmed.