JOINT SCHOOL DISTRICT NO. 8, CITY OF MADISON, Appellant, v. WISCONSIN EMPLOYMENT RELATIONS BOARD and another, Respondents.

*December 1—December 29, 1967.*

484

For the appellant there was a brief by *Edwin C. Conrad*, city attorney, and *William A. Jansen*, assistant city attorney, both of Madison, and oral argument by *Mr. Jansen*.

For the respondent Wisconsin Employment Relations Board the cause was argued by *William H. Wilker*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

For the respondent Madison Teachers, Inc., there was a brief and oral argument by *Robert J. Cameron* of Madison.

A brief *amicus curiae* was filed by *Ela, Christianson, Ela, Esch, Hart & Clark*, attorneys, and *James F. Clark*, legal counsel, all of Madison, for the Wisconsin Association of School Boards, Inc.

HALLOWS, J. This appeal raises two issues: (1) Is the school calendar a negotiable item under sec. 111.70 (2), Stats., and (2) were the requirements met which permit fact finding to be initiated under sec. 111.- 70 (4) (e)?

Sec. 111.70, Stats., was created by ch. 509, Laws of 1959, as subchapter IV to ch. 111 dealing with employment relations, to regulate the relations between public employees and municipalities. It was one of the first, if not the first law, of its kind in the United States to comprehensively cover the relationship of municipal employers and employees. Although since 1939 Wisconsin has had an Employment Peace Act, which is subchapter I of the employment relations chapter covering nonpublic and nonmunicipal employer and employee, sec. 111.70 applying to municipal employees did not follow the general act in several significant respects. Under the Employment Peace Act collective bargaining is defined in sec. 111.02 (5) as ". . . negotiating by an employer and a majority of his employees in a collective bargaining unit (or their representatives) concerning representation or terms and conditions of employment of such employees in a mutually genuine effort to reach an agreement with reference to the subject under negotiation." There is no parallel definition of collective bargaining and no reference to this section in sec. 111.70 although there are references to the Employment Peace Act in other respects. Likewise, the refusal to bargain collectively under subchapter I, sec. 111.06 (1) (d), is made an unfair labor practice and by sec. 111.07 (4) and (7), the prevention of an unfair labor practice may be the subject of an order of the board which may be enforced by a restraining order of the circuit court. Comparable sections are not found in sec. 111.70.

Under the Employment Peace Act the employees by sec. 111.04, Stats., have the right ". . . to bargain collectively through representatives of their own choosing, and to engage in lawful concerted activities for the purpose of collective bargaining . . ." But sec. 111.70 does not use the term "collective bargaining" in the paragraph referring to the right of municipal employees. It is provided in sec. 111.70 (2) that municipal employees shall have

". . . the right to be represented by labor organizations of their own choice in conferences and negotiations with their municipal employers or their representatives on questions of wages, hours, and conditions of employment." The term "prohibited practices" is used in sec. 111.70 (3) with respect to municipal employees rather than "unfair labor practices" as used in sec. 111.06. There is no designation that the failure on the part of the municipal employer to confer and negotiate is a prohibited practice and there is no comparable sanction for such failure as is provided in sec. 111.06 for the unfair labor practice of failing to collectively bargain.

The legislature did not follow the pattern of the Municipal Employes Act when in 1965 by ch. 612 it created the State Employment Labor Relations Act as subchapter V of ch. 111. Sec. 111.81 (2) of the new act expressly defines collective bargaining; sec. 111.82 expressly confers the right upon state employees to collectively bargain, and sec. 111.84 (1) (d) expressly provides the refusal to bargain collectively is a prohibited practice. While fact finding is provided as a remedy, the WERB is also given power to prevent a prohibited practice as in industrial labor relations. Thus the distinctions in labor relations between the private sector and municipal employment have been emphasized by the legislature.

Because of these differences in language, we do not think the legislature intended in sec. 111.70, Stats., that a school board should be under a duty to collectively bargain. This is substantially the interpretation given sec. 111.70 by the majority of the board in *Moes v. New Berlin* (March, 1966), Case IV, No. 9897, Dec. No. 7293. We are aware of the dissent in that case and the fact the term "collective bargaining" does appear in other subs. of sec. 111.70.

In sec. 111.70 (4), Stats., relating to powers of the WERB, we find the term "bargaining" and the title of sub. (4) (d) is "Collective-bargaining units." Sub. (4)

(e) referring to fact finding provides, among other things, that where the employer and union fail or refuse to negotiate in good faith at reasonable times in a bona fide effort to arrive at a settlement, the fact-finding process may be initiated. In sec. 111.70 (4) (h) 2 and sub. (4) (i), the term "collective-bargaining unit" is used, but these uses of the term "collective-bargaining unit" and of the phrase "meet and negotiate in good faith in a bona fide effort to arrive at a settlement" do not require the right to be represented ". . . in conferences and negotiations" given in sec. 111.70 (2) to mean "collective bargaining" as defined in sec. 111.02 (5).

*Is the school calendar a negotiable item under sec. 111.70 (2), Stats.?*

There is no question that sec. 111.70, Stats., applies to school teachers. *Muskego-Norway Consolidated Schools Joint School Dist. No. 9 v. Wisconsin Employment Relations Board* (1967), 35 Wis. 2d 540, 151 N. W. 2d 617. The question is whether the school calendar is a question "of wages, hours and conditions of employment" and thus a subject of conferences and negotiations under sec. 111.70 (2). The WERB found and the circuit court agreed that the school calendar affecting teachers in the employ of the school board "has a direct and intimate relationship to their salaries and working conditions," because it established the number and dates of the teaching days and of the in-service days including the dates of the beginning and end of the school year. We think the language of sec. 111.70 (2) is sufficiently broad to cover the items constituting the school calendar. The days on which teachers must teach or be in service have a significant relationship to the "hours and conditions," if not the salary, of teachers and render the school calendar negotiable. The United States Supreme Court has construed the language "wages, hours and other terms and conditions of employment" under the National

Labor Relations Act, sec. 8 (d), to include the particular days of the week on which the employees are required to work. In addressing itself to the problem of whether a collective-bargaining agreement violated the Sherman Trust Act, the supreme court said in *Meat Cutters v. Jewel Tea* (1965), 381 U. S. 676, 691, 85 Sup. Ct. 1596, 14 L. Ed. 2d 640:

"Contrary to the Court of Appeals, we think that the particular hours of the day and the particular days of the week during which employees shall be required to work are subjects well within the realm of 'wages, hours, and other terms and conditions of employment' about which employers and unions must bargain."

In the instant case the argument of the school board is not so much that the language of the statute does not embrace the school calendar within its terms as that such meaning should be read out of the act because otherwise there exists a conflict with various subsections of ch. 40, and such an interpretation would require the school board to surrender its powers as a municipal corporation and to illegally delegate its legislative authority. It is also argued the fact-finding process is time consuming and ill-fitted for school calendar purposes and it is not in the public interest to use such a method to dissuade or persuade the school board in its determination of a basic educational policy such as school calendar making.

The brief on behalf of Wisconsin Association of School Boards, Inc., as *amicus curiae* makes it plain that they do not contend that conferences and negotiations between school boards and employee units are precluded in all areas but only that the school board may not be required by legislation to bargain or submit to fact finding on basic educational-policy determinations. This argument assumes the school calendar is a basic educational-policy determination and that the negotiation of such calendar violates art. X, secs. 1 and 3, of the Wisconsin Constitution. The state constitution by art. X, sec. 1, provides the

supervision of the educational policy for public schools is vested in the state superintendent and such other officers as are designated by the legislature. This section is implemented by secs. 39.02 and 40.29 (1), among other statutes. Sec. 39.02 deals with the duties of the state superintendent of public instruction and sec. 40.29 with the duties of district school boards. Art. X, sec. 3, requires the district school shall be as nearly uniform as practicable. We do not think discussing, conferring and negotiating about the school calendar takes away or impedes any of the duties or powers conferred by these sections or by the constitution. Nor do we believe that constitutional uniformity requires the school calendar shall be identical in every city, town and hamlet.

We need not decide whether the determination of a school calendar is a major educational-policy determination. While its determination is for the school board, we do not consider it to be immunized for that reason from the scope of sec. 111.70 (2), Stats. Many items and restrictions in a school calendar are established by statute. School year, term and session are defined in sec. 40.01. In 40.45 the requirements for a school month are set forth and certain holidays are designed as nonteaching days and others as only special observance days. In sec. 40.22 (12) a school board is given power to fix the length of time school shall be taught and in sec. 40.30 (17m) a board may establish rules scheduling the hours of each school day. These items determined by statute, of course, cannot be changed by negotiation. But what is left to the school boards in respect to the school calendar is subject to compulsory discussion and negotiation. As stated in *Norwalk Teachers' Asso. v. Board of Education* (1951), 138 Conn. 269, 277, 83 Atl. 2d 482, ". . . the plaintiff may organize and bargain collectively for the pay and working conditions which it may be in the power of the board of education to grant."

The contents of the curriculum would be a different matter. Subjects of study are within the scope of basic educational policy and additionally are not related to wages, hours and conditions of employment. It is admitted, however, the school calendar is a permissively negotiable subject. It is stated the number of days an individual teacher works in a school term is negotiable with the teacher in the individual teacher contract. But if the number of teaching days may be negotiated with an individual teacher, it may be negotiated through representation on behalf of all the teachers.

But it is argued that if the school board were to negotiate the school calendar it would surrender its powers as a municipal corporation and would be delegating its legislative powers to the negotiating process and ultimately to the fact-finding proceeding. This attitude is well stated by Mulcahy in his article, *A Municipality's Rights and Responsibilities Under the Wisconsin Municipal Labor Law*, 49 Marq. L. Rev. (1966), 512, 513:

"Government officials must exercise greater flexibility and ingenuity, therefore, to arrive at a workable procedure for dealing with municipal labor matters. The only alternative is to resist application of the existing law. Arguments of unconstitutionality (illegal delegation and challenge of sovereignty) may sound temporarily appealing to a government official who is set in his ways but judicial rulings are steadfastly affirming municipal labor legislation."

It is argued that the new duties placed upon school boards by sec. 111.70, Stats., must be strictly interpreted to exclude the school board's legislative powers under ch. 40. However, in *Muskego-Norway v. Wisconsin Employment Relations Board* (1967), 35 Wis. 2d 540, 151 N. W. 2d 617, this court undertook to state the relationship between various sections of ch. 40 and sec. 111.70 and took the view that since sec. 111.70 was enacted after ch.

40 it was presumed to have been enacted with full knowledge of the preexisting statutes and thus the statutes should be harmonized by construction. We must therefore reject a strict interpretation of sec. 111.70 so as to favor ch. 40.

The delegation of legislative discretion argument is based primarily on the concept that sec. 111.70, Stats., forces a determination either legally by collective bargaining or by moral force through fact finding. The thrust of this argument is that legislative discretion must be exercised completely without restraint or persuasion of any kind. We think if the ultimate responsibility for decision is solely that of the school board, the legislative authority is not limited or delegated. While one authority has not made a distinction between conferring and negotiating and collective bargaining under sec. 111.70,[1] we think this vital distinction does exist. If the school calendar was subject to collective bargaining in the conventional sense in which that term is used in industrial labor relations under sec. 111.02 (5), there would be merit to the argument of the school board that its legislative function is being delegated or surrendered and thus the calendar could not constitutionally be a subject of negotiation although it fell within the broad terms of the statute. However, under sec. 111.70 the school board need neither surrender its discretion in determining calendar policy nor come to an agreement in the collective-bargaining sense. The board must, however, confer and negotiate and this includes a consideration of the suggestions and reasons of the teachers. But there is no duty upon the school board to agree against its judgment with the suggestions and it is not a forbidden practice for the school board to determine in its own judgment what the school calendar should be even though such course of action rejects the teachers' wishes. The refusal to come

---

[1] See Seitz, *Legal Aspects of Public School Teacher Negotiating and Participating in Concerted Activities*, 49 Marq. L. Rev. (1966), 487.

to a "settlement" may, of course, place the school board in a position where the teachers can invoke the fact-finding procedure, but the findings of the fact finder if adverse to the board are not binding upon it. The force of the fact-finding procedure is public opinion, and the legislative process thrives on such enlightenment in a democracy.

We think the Michigan circuit court for Lapeer county in *Nichols v. Board of Education of the Imlay City Community Schools No. 6, Lapeer County,* decided January 3, 1967, cited by the school board, is distinguishable. If we understand that case, it dealt with collective bargaining in a conventional sense of a subject of educational policy, *i.e.,* whether the school district should take advantage of federal funds available for special and remedial programs. Likewise, *State ex rel. Brown v. Board of Education* (1955), 162 Ohio St. 589, 124 N. E. 2d 721, does not reach the question before us but holds only the board of education had statutory authority to determine the termination date of the school year and to designate certain days for performing administrative duties by the teachers. There is no issue in the instant case that the school calendar is not within the legislative function of a school board.

It is argued that fact finding is time consuming and ill-suited for calendar making. The fact finding need not be a slow process and the WERB can act expeditiously when time is of the essence; so can a fact finder. This argument, as a ground for interpreting the language of sec. 111.70 (2), Stats., is not convincing.

Whether fact finding should be used to dissuade or persuade a school board in its determination of a school calendar is a question of public policy for the legislature. If the fact-finding technique is not in the public interest in this area of labor relations as argued in the *amicus curiae* brief based upon an article by Mulcahy entitled, *A Municipality's Rights and Responsibilities Under the*

*Wisconsin Municipal Labor Law*, 49 Marq. L. Rev. (1966), 512, then the legislature should be so informed.

*Have the requirements been met which permit fact finding to be initiated?*

According to sec. 111.70 (4) (e), Stats.,[2] fact finding may be initiated if the parties are deadlocked or if either party refuses to meet or negotiate. The city's argument that there cannot be a deadlock unless there is a breach of a duty to negotiate is now answered because we have decided the school calendar is the subject of negotiation and compulsorily so. The WERB found the parties reached a deadlock over the school calendar. This is denied by the school board which claims the calendar was not negotiable. Whether this was a correct ground seems immaterial now since the school board admits it refused to negotiate because the school calendar was nonnegotiable. We point out, as did the circuit judge that this case involves the 1966–1967 school calendar, which is now history, but the question is of first impression and of such public interest and importance and is asserted under conditions which will immediately recur if a dismissal is granted that the issue should be decided and is not subject to the rule of mootness. *Wisconsin Employment Relations Board v. Allis Chalmers* (1948), 252 Wis. 436, 31 N. W. 2d 772, 32 N. W. 2d 190.

*By the Court.*—Judgment affirmed.

---

[2] "(e) *Fact finding.* Fact finding may be initiated in the following circumstances: 1. If after a reasonable period of negotiation the parties are deadlocked, either party or the parties jointly may initiate fact finding; 2. Where an employer or union fails or refuses to meet and negotiate in good faith at reasonable times in a bona fide effort to arrive at a settlement."