BOARD OF EDUCATION OF UNIFIED SCHOOL DISTRICT No. 1 and others, Petitioners and Respondents; ASHLAND FEDERATION OF TEACHERS, LOCAL 1275, AFL-CIO, Intervenor-Respondent v. WISCONSIN EMPLOYMENT RELATIONS COMMISSION, Appellant: KOVALA and another, Respondents.

*No. 165. Argued October 5, 1971.—Decided November 5, 1971.*
(Also reported in 191 N. W. 2d 242.)

628

For the appellant the cause was argued by *William H. Wilker,* assistant attorney general, with whom on the briefs was *Robert W. Warren,* attorney general.

For the respondents Raymond Kovala and Ashland Education Association there was a brief by *Lawton & Cates* and *Kent I. Carnell* and *John C. Carlson*, all of Madison, and oral argument by *Mr. Carnell.*

For the intervenor-respondent Ashland Federation of Teachers, Local 1275, AFL-CIO, there was a brief by *Goldberg, Previant & Uelmen*, attorneys, and *John S. Williamson, Jr.*, of counsel, all of Milwaukee, and oral argument by *Mr. Williamson.*

BEILFUSS, J. The parties are not in agreement as to the issues involved. We deem the following questions should be decided:

(1) Is a collective bargaining provision which provides for the release of teachers from in-service days to attend, with pay, a state teachers' convention of the majority union and which, as interpreted by the board of education, denies compensation to teachers of a minority union for attending a regional convention on the same days, a prohibited discriminatory practice?

(2) Was the order of the WERC that minority union teachers who attended their regional meeting be reimbursed for the time off and subsequent modification by the circuit court that minority members should be compensated for time off for either their regional or state convention a valid order and judgment?

Three statutes must be considered. They are: secs. 111.70 (2) and (3) (a) 1 and 2; 115.01 (10) (a) 2; and 118.21 (4).

"111.70 **Municipal employment.** . . .

"(2) RIGHTS OF MUNICIPAL EMPLOYES. Municipal employes shall have the right of self-organization, to affiliate with labor organizations of their own choosing and the right to be represented by labor organizations of their own choice in conferences and negotiations with their municipal employers or their representatives on questions of wages, hours and conditions of employment,

and such employes shall have the right to refrain from any and all such activities.

"(3) PROHIBITED PRACTICES. (a) Municipal employers, their officers and agents are prohibited from:

"1. Interfering with, restraining or coercing any municipal employe in the exercise of the rights provided in sub. (2).

"2. Encouraging or discouraging membership in any labor organization, employe agency, committee, association or representation plan by discrimination in regard to hiring, tenure or other terms or conditions of employment."

"115.01 **Classifications and definitions.** In this title:
. . .

"(10) SCHOOL DAY. (a) School days are days on which school is actually taught and the following days on which school is not taught: . . .

"2. Days on which state teachers' conventions are held."

"118.21 **Teacher contracts.** . . .

"(4) School boards may give to any teacher, without deduction from his wages, the whole or part of any time spent by him in attending a teachers' educational convention, upon the teacher's filing with the school district clerk a certificate of attendance at the convention, signed by the person or secretary of the association conducting the convention."

The majority union, here the AFT, is the exclusive bargaining agent for all of the school teachers employed by the school district,[1] (except some who may be employed in supervisory, administrative or other designated positions). As such, the AFT was empowered to negotiate the wages, hours and conditions of employment for all teachers in the school district. The school calendar and in-service days are subject to negotiation with the bargaining agent [2] under sec. 111.70 (2), Stats. Like-

---

[1] *Board of School Directors of Milwaukee v. WERC* (1969), 42 Wis. 2d 637, 168 N. W. 2d 92.

[2] *Joint School Dist. No. 8 v. Wisconsin Employment Relations Board* (1967), 37 Wis. 2d 483, 155 N. W. 2d 78.

wise educational conventions, and whether they are to be considered in-service or school days, and questions of compensation for such days are, we believe, within the statutorily defined area of negotiation on "wages, hours, and conditions of employment."

The contract clause, "If on October 3, 4 a teacher wishes to go to the State W. F. of T. Convention he or she will be released from inservice activities for that period," as interpreted by the board of education, clearly treats the members of the majority union preferentially. Only teachers attending the WFT state convention on October 3 and 4, 1968, were to go to a convention with pay. The AFT admits this contract provision inures only to the benefit of the majority union, thus tacitly admitting that the provision discriminates against the minority union members because they cannot take those days off with pay as a matter of right. It is true that the board of education did have the discretion to give the minority union members teacher convention days off with pay under sec. 118.21 (4), Stats. The difference remains, one union gets the days off as a matter of labor organization negotiated contractual right, the other union members depend upon a favorable disposition of the school board. This is discriminatory treatment and a violation of sec. 111.70 (3) (a) 2.

The parties that created the contract (AFT and the board of education) are guilty of discrimination because both of them, in the give and take of the bargaining process, agreed to this contract provision which had the effect of discouraging membership in the minority union by affecting the terms and conditions of their employment. The board of education must take responsibility for a contract that it helped to create.[3]

---

[3] *Wisconsin Employment Relations Board v. Algoma Plywood & Veneer Co.* (1948), 252 Wis. 549, 32 N. W. 2d 417.

A labor contract term that is violative of public policy or a statute is void as a matter of law.[4]

The WERC, after determining the disputed contract clause as interpreted was discriminatory and as such in violation of sec. 111.70 (3), Stats., ordered the board of education to cease and desist the discriminatory practices and ordered it to pay the AEA members their wages for the two days they attended the NWLSEA regional convention. The circuit court modified the order to include payment for time spent at either a regional convention held on the same days as the AFT convention, or the state AEA convention held on different dates.

The WERC, AEA and Kovala contend the circuit court judgment insofar as it amends the WERC order for payment to the AEA members who attended another convention should be reversed and the WERC order should be affirmed in its entirety.

The AFT contends the WERC order for payment to the AEA members should be reversed.

There is no doubt that the WERC has substantial remedial powers to fashion remedies to effectuate the purpose of the statute for fair employment and peaceful negotiation and settlement of municipal labor disputes.[5]

Sec. 111.70 (4) (a), Stats., provides:

"POWERS OF THE COMMISSION. The commission shall be governed by the following provisions relating to bargaining in municipal employment:

"(a) *Prevention of prohibited practices.* Section 111.07 shall govern procedure in all cases involving prohibited practices under this subchapter."

[4] *Dunphy Boat Corp. v. WERB* (1954), 267 Wis. 316, 64 N. W. 2d 866.

[5] *Id.* at page 326; *General Drivers & Helpers Union v. Wisconsin Employment Relations Board* (1963), 21 Wis. 2d 242, 249, 124 N. W. 2d 123.

Sec. 111.07 (4), Stats., states:

". . . Final orders may dismiss the charges or require the person complained of to cease and desist from the unfair labor practices found to have been committed, . . . and require him to take such affirmative action, including reinstatement of employes with or without pay, as the commission deems proper. . . ."

School districts and school boards were created and obtained their powers and duties from the legislature as set forth by statute. The creation, powers and duties of the WERC have the same origin, namely, the legislature. If these duties and powers of the school board conflict with duties and powers of the WERC, the court, by statutory construction, must resolve the conflict.

In *Muskego-Norway Consolidated Schools Joint School District No. 9 v. W. E. R. B.* (1967), 35 Wis. 2d 540, 556, 557, 151 N. W. 2d 617, we stated:

"The provisions of sec. 111.70, Stats., apply to the authority of school districts to the same extent as the authority of other municipal governing bodies. Sec. 111.70 was enacted after secs. 40.40 and 40.41 and is presumed to have been enacted with a full knowledge of preexisting statutes. Construction of statutes should be done in a way which harmonizes the whole system of law of which they are a part, and any conflict should be reconciled if possible.

"Sec. 40.40 (3), Stats., provides that a school board may give to a teacher without deducting from her wages the whole or any part of time spent in attending a teachers' convention upon filing with the clerk a certificate showing such attendance. Sec. 40.45 provides that days on which state and county teachers' conventions are held are considered to be school days. Under sec. 111.70 (2) teachers have the right to refrain from affiliating with labor organizations and forcing teachers to join employee organizations is expressly forbidden by sec. 111.70 (3) (a) 1. These statutes are not necessarily in conflict. They can all be given effect by construing them together and ruling that teachers cannot be required to attend such conventions under threat of loss of pay, but that

teachers who do not attend such conventions can be required to work for the school. In this way teachers can avoid deductions from their salaries while the right to refuse to join a labor organization guaranteed by sec. 111.70 (2) is preserved. If the teacher refuses to work, deductions from his salary could be made, but if the school does not offer work to teachers not attending conventions, the school cannot deny pay to such teachers."

In the memorandum opinion of the WERC supporting its findings, conclusions and order, it stated, in effect, that *Muskego-Norway, supra,* is authority for the proposition that statutes relating to teachers or teachers' conventions and authority of boards of education are subject to the limitations of sec. 111.70, Stats., and sec. 111.70 must prevail if a conflict exists.

We do not believe *Muskego-Norway, supra,* goes that far in favoring one statute over another. *Muskego-Norway* said that all the statutes should be harmonized if that was possible, and that the court recognized the legislature was presumed to be aware of the then existing school code when it enacted sec. 111.70, Stats.

Insofar as the presumption of recognizing existing statutes by the legislature is concerned, the situation is now reversed. In 1959, when sec. 111.70, Stats., was enacted, the relevant school statutes were the same as they were at the time of *Muskego-Norway, supra,* but they are not the same as they were at the time of the 1968 contract, and as they are now.

The statutes were renumbered and amended by the legislature in 1967. Sec. 40.45 (1), Stats. 1965, was amended and renumbered 115.01 (10). Sec. 115.01 (10) (a) and (10) (a) 2, provide:

"(10) SCHOOL DAY. (a) School days are days on which school is actually taught and the following days on which school is not taught: . . .
"2. Days on which *state* teachers' conventions are held." (Emphasis supplied.)

Sec. 40.45 (1) (b), Stats. 1965, provided:

"Days on which *state and county* teachers' conventions are held." (Emphasis supplied.)

The obvious difference is that under the present statute the legislature recognizes only days of state teachers' conventions as school days, whereas the former statute recognized both county and state conventions.

In fixing school year calendars the board of education must be cognizant of the number of school days. If teachers are excused to attend a convention that is not a state convention, the time so spent cannot be considered a school day under sec. 115.01 (10) (a) 2, Stats. This in turn leads to additional problems such as minimum school days for state aid, availability and costs of substitute teachers for school classes, and other problems. The significant point, of course, is that whether the time given to teachers to attend conventions is counted as a school day is a relevant and necessary consideration of the boards of education in the performance of their duties.

Sec. 118.21 (4), Stats., provides in part:

"School boards may give to any teacher, without deduction from his wages, the whole or part of any time spent by him in attending a teachers' educational convention, . . ." [6]

We believe under this section that the school board or the board of education is given discretion as to whether teachers individually or collectively will be given time off to attend any educational convention, including a state or regional convention, how much time off will be given, how many conventions can be attended, and

---

[6] The predecessor section is 40.40 (3), Stats. 1965, and provides in part: "The board may give to any teacher, without deduction from her wages, the whole or part of any time spent by her in attending a teacher's institute held in the county, or a school board convention or the meeting of any teachers' association . . . ."

whether it is to be with or without pay in whole or in part. The discretion exercised must not be unreasonable, illegally motivated, nor arbitrary and, although the final determination must rest with the board of education, it is a subject upon which the board of education must negotiate with the representative of the majority labor organization representing the teachers.[7]

Under the facts in the record the only state convention held on October 3d and 4th was the WFT convention in Milwaukee. The Ashland teachers were permitted to attend this convention under the negotiated contract without loss of wages. This was agreed to by the school board and permissible under secs. 115.01 (10) (a) 2, and 118.21 (4), Stats. The prohibited discriminatory practice occurred when the contract was interpreted as excluding teachers from attending any other educational convention sponsored by the competing minority union on those days or any other days. The board of education could have but did not permit the teachers of the minority union to attend their state convention held on different days. It may well have had legitimate reasons for not doing so, such as closing the school on two occasions, or hiring qualified substitutes in adequate numbers. In the absence of a record to the contrary, we presume its reasons were based upon proper considerations.

Under sec. 118.21 (4), Stats., the board of education could have permitted the minority organization members to attend the NWLSEA regional convention at Spooner. The section uses the word "may" and therefore the matter was within the discretion of the board of education. Again the record does not reveal any reason why the minority organization members were not given this privilege.

The legislature does not equate regional conventions with state conventions because the "School Day" section,

---

[7] *See Joint School Dist. No. 8 v. Wisconsin Employment Relations Board* (1967), 37 Wis. 2d 483, 494, 155 N. W. 2d 78.

115.01 (10), Stats., specifies only state conventions. We do not deem this to be a legislative oversight because the predecessor statute specified state and county conventions. In the absence of a record to the contrary, we can assume the board of education may have determined that the scope of the program offered at the regional convention and the quality of educational information disseminated was not of the same quality as a state convention.

In any event, if upon these reasons or others, we believe it was a matter for the exercise of proper discretion by the board of education, and in the absence of a record we presume it did so.

It follows therefore that under the facts of this case the board of education had statutory power to decide that teachers would not be permitted to attend, with pay, state conventions other than on October 3d and 4th, and that they would not be permitted to attend regional conventions with pay at any time. Further, we believe that the WERC could not overlook the power and the discretion given to the school boards by the legislature in statutes enacted after the passage of sec. 111.70.

We believe the specific school statutes prevail over the general municipal employee statutes in those instances where both cannot be given effect, or where they do not harmonize.

We conclude, therefore, that the WERC order insofar as it directs the school board to pay the wages of the AEA members for time spent on October 3 and 4, 1968, at the NWLSEA regional meeting at Superior should be reversed.

We have determined that the order of the WERC, insofar as it requires payment of wages for time spent at the regional convention, must be reversed. This probably makes any consideration of the circuit court's modification of the same order a moot question. We will, however, briefly comment.

Sec. 111.07 (8), Stats., provides the order of the commission (WERC) shall be subject to review as provided in ch. 227 (excepting the venue). Sec. 227.20 (1), Stats. 1969, provides in part:

". . . The court may affirm the decision of the agency, or may reverse or modify it if the substantial rights of the appellant have been prejudiced . . . ."

Sec. 227.20 (1), Stats., also provides in part:

"The review shall be conducted by the court without a jury and shall be confined to the record, . . ."

We think the rule is clear,—the court can modify the order of the commission but cannot go outside the record for facts (except in limited situations not pertinent here).[8]

In this case, however, the only issue confronting the WERC was whether the AFT and the board of education violated sec. 111.70, Stats., and whether the AEA members were entitled to their regular school compensation for October 3 and 4, 1968, when they attended a regional convention. The WERC decided they were entitled to compensation but the circuit court went one step beyond and said they were entitled to compensation if they attended a teachers' convention regardless of the days involved or whether it was state or regional.

There was no evidence before the WERC or before the circuit court as to whether the board of education did not pay the AEA teachers because they attended a state convention on November 7 and 8, 1968. If this is the state of the record, the circuit court went beyond the record and based its modification upon matters not in the record and not at issue. A modification of a commission order under those circumstances should be reversed.

[8] See *State v. Lamping* (1967), 36 Wis. 2d 328, 153 N. W. 2d 23.

Our determination that the order of the WERC and the judgment of the circuit court should be affirmed insofar as they determined a prohibited discriminatory practice had been committed, and that the order and judgment should be reversed insofar as they ordered payment of regular wages for teachers who attended a regional meeting may do very little in setting comprehensive guidelines for attendance at educational conventions.

The problems apparent in this case could easily be solved by the unions having their state conventions at the same time. It seems that this is but a small price to pay when contrasted to the problems facing the school board in determining if part of the teachers can be released with or without compensation on various and different dates. Another alternative, probably less desirable, is that the legislature enact more definitive and undoubtedly more rigid classifications and rules concerning teachers' conventions.

*By the Court.*—Judgment affirmed in part; reversed in part.

WILKIE, J. (*concurring in part; dissenting in part*). I agree with the majority opinion holding that the clause in the contract allowing only members of the WFT to attend state conventions is discriminatory and therefore void. It is my opinion, however, that once such discrimination has been found, the WERC possesses substantial powers to grant remedial relief and for this reason had the authority to provide in its order that the Ashland school board pay the minority union employees for the days they attended their convention. This would achieve substantial equity as between all teachers whether they are members of the majority union or of the minority union. The WERC is given substantial powers to remedy situations where prohibited practices have taken place.

Sec. 111.70 (4) (a), Stats., provides:

"(4) POWERS OF THE COMMISSION. The commission shall be governed by the following provisions relating to bargaining in municipal employment:
"(a) *Prevention of prohibited practices.* Section 111.07 shall govern procedure in all cases involving prohibited practices under this subchapter."

Sec. 111.07 (4), Stats., provides:

". . . Final orders may dismiss the charges or require the person complained of to cease and desist from the unfair labor practices found to have been committed, . . . and require him to take such affirmative action, including reinstatement of employes with or without pay, as the commission deems proper. . . ."

I conclude that the WERC had the power to order the board of education to reimburse the AEA members for their loss of pay due to their attendance at the regional AEA convention.

The majority opinion deals at some length with the effect of changes in wording of the statutes in 1967. I do not think such analysis is necessary to the decision of this case. Even if we assume that days taken off for regional conventions are not "school days" within the meaning of sec. 115.01 (10), Stats., and that the school board has discretion in granting days off for conventions, this does not assist us in reaching a result in the present case. Here there has been illegal discrimination against members of the minority union—the majority opinion admits this. To me the question is: What can be done to redress this wrong? This is the question not considered by the majority.

In *Wisconsin Employment Relations Board v. Gateway Glass Co.*[1] and *General Drivers & Helpers Union v. Wisconsin Employment Relations Board*[2] this court specifically recognized the labor board's power to order the

---

[1] (1953), 265 Wis. 114, 60 N. W. 2d 768.

[2] (1963), 21 Wis. 2d 242, 249, 124 N. W. 2d 123.

employer to pay money to designated employees. By virtue of sec. 111.70 (4) (a), Stats., the WERC's power in municipal employee cases is the same as in those involving private employees. In the present case the order requiring the school board to pay the minority union employees was within the scope of the WERC's power and was proper under the circumstances. I would affirm the exercise of that power.

As noted by the majority, the circuit court exceeded its jurisdiction in going beyond the issues decided by the WERC. I would, therefore, concur as to the majority's reversal of the circuit court's judgment to the extent it exceeds the WERC's order.