119 N.J. Super. 276 (1972)
291 A.2d 150
BURLINGTON COUNTY COLLEGE FACULTY ASSOCIATION, PLAINTIFF,
v.
BOARD OF TRUSTEES, BURLINGTON COUNTY COLLEGE, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 23, 1972.
*277 Mr. William S. Greenberg for plaintiff (Messrs. Sterns & Greenberg, attorneys).
Mr. Myron H. Gottlieb for defendants (Messrs. Kessler, Tutek and Gottlieb, attorneys).
MARTINO, A.J.S.C.
Plaintiff seeks a declaration as to the intent and interpretation of the New Jersey Employer-Employee Relations Act and particularly N.J.S.A. 34:13A-5.3, which among other matters provides:
* * * representatives designated * * * shall be the exclusive representatives for collective negotiation concerning the terms and conditions of employment of the employees in such unit. * * * Proposed new rules or modifications of existing rules governing working conditions shall, be negotiated with the majority representative before they are established.
Plaintiff contends that the college calendar fits the category set forth in said statute when it refers to "proposed new rules or modifications of existing rules governing working conditions," and further, that the college calendar is a "terms and conditions of employment of the employees" which requires negotiation as a part of the contractual relationship *278 between the faculty and its employer, defendant college.
A close reading of N.J.S.A. 34:13A-5.3 indicates that it provides on the one hand that proposed new rules or modification of existing rules governing working conditions be negotiated, and on the other hand that terms and conditions of employment be negotiated in good faith.
Defendant institution contends that the college calendar is the establishment of educational policies which should remain within its control and is not mandatorily negotiable.
The matter being heard without a jury, the court makes the following findings of facts and conclusions of law pursuant to R. 1:7-4.
The president of plaintiff association, who was also the chief negotiator, testified that the first year negotiations were entered into was for 1970-71. Among the matters negotiated were salaries, faculty load, grievances, personnel files, sick and sabbatical leaves, parking privileges, offices for faculty members and certain other minor items. The school board representatives refused to negotiate a calendar. A contract was nevertheless agreed upon for 1970-71. The following year another contract was entered into after negotiations, but again the school board refused to negotiate on the school calendar. A calendar controls the number of weeks in an academic year. The college offers evening courses and the college controls what members of the faculty shall work these courses. He stated that a calendar was important to a faculty member because a calendar could permit members of a faculty to arrange to attend other schools for the purpose of earning additional scholastic degrees, would permit teachers to plan to attend European countries which could add to their experiences in particular subjects which they taught, viz., England, the Shakespeare locale, Spain for the language and customs and so forth; that calendars sometimes are set up for a period of time which might affect the time allotted for the proper teaching of subjects to students who are eligible for admittance to a *279 community college; that the efforts to have the school board consider suggestions for the calendar were refused. The suggestions which were typed and offered to the school board for the years and rejected for consideration were marked in evidence. One of these calendars was passed upon by a defendant witness, a qualified educator, who felt it was a favorable type of calendar.
A representative of the New Jersey Educational Association, of which organization plaintiff is an affiliate, testified as an expert in the field of school contract negotiations. He had experience in negotiations on calendars for other faculties. His organization assisted in the passage of N.J.S.A. 34:13A-1 et seq. He testified he had examined all the calendars of the county colleges in this State. He made up a chart, admitted in evidence, on which was diagramed the length of work time that was required under the various calendars he examined. He found that Bergen County worked 9 days less than Burlington under its calendar; Brookdale College (Monmouth County) worked 31 days less; Camden worked 39 days less; Cumberland worked 17 days less; Essex worked 41 days less; Gloucester worked 15 days less; Mercer worked 12 days less; Middlesex worked 16 days less; Ocean worked 21 days less; Somerset worked 28 days less and Union worked 8 days less. No effort was made to dispute these findings by testimony which had a basis in fact.
Defendant produced a witness who was the negotiator for the board of trustees. He said he refused to negotiate the calendar with plaintiff's representative because the board of trustees felt that the calendar was a management prerogative; that a calendar was prepared for all types of members of the college community, such as students, noninstructional persons and others who were concerned with the college's welfare.
The president of the college testified that the calendar was prepared by studying other calendars for similar or like institutions; that the board of trustees felt that students *280 and taxpayers also had to be taken into consideration in the preparation of the calendar; that a governance structure was created at the college, from which was established a calendar committee consisting of representatives of the students, the faculty, deans in the college and administrative personnel; that faculty members on the calendar committee were appointed by the faculty; that the new calendar has had some suggestions from that committee for adjustment of the 1972-73 calendar; that he has given some recommendations made by the calendar committee to the board of trustees. He feels that there is a relationship between the calendar and the budget, and that the board of trustees feels that the calendar is a management prerogative. He personally feels that the committees functioning in the college is a better way to prepare a calendar than direct negotiations with plaintiff's representatives. He had met with the calendar committee on three or four occasions. He stated there are many types of calendars, not only within the State but throughout the United States. He felt that he was to follow the dictates of the board of trustees, which felt that the calendar was a management prerogative. He conceded that the Board of Higher Education, Department of Higher Education, was not concerned with a school calendar and did not have to approve a calendar, and the only reason such a calendar was filed with that Board was to satisfy that Department a minimum of 30 weeks of instruction, exclusive of registration and final examination periods, would be provided for that year.
Another witness called by defendant, who was plaintiff's negotiator and who testified for it, was asked about the members of the faculty who were members of the calendar committee, and it was shown that of the six faculty members who were on this committee, three were representative of management and three were members of plaintiff association but were not delegated to serve on that committee by the association.
*281 The final witness called by defendant was a professor of higher education at the University of Florida. For 12 years he was Director of Community Colleges in the State of Florida, which office he left in 1968. He has been consulted on community colleges in various parts of the United States. He has been working with the officials at the Burlington County College since it was first conceived. He has had many conversations with the college president and members of the faculty of Burlington College. He has had no experience with labor negotiations because Florida has never had an employer-employee relations act. He defined a calendar as the way a year is divided up. He stated there is a wide divergence of calendar types in the United States in institutions of higher learning. He was never consulted about the Burlington County College calendar. He agreed that there is quite a distinction between a calendar and a curriculum. He cannot conceive of any calendar that could be developed which would serve all colleges. He admitted that one of the calendars proposed by plaintiff organization in earlier negotiations and rejected was a good one.
He was not asked what in his expert opinion would be the interpretation of "terms and conditions of employment" or the expression "working conditions," as outlined in the Employer-Employees Relations Act of this State.
The jurisdiction of the court to pass upon this question arises from the failure of the Legislature to clearly define another course for plaintiff to pursue in order to afford it a remedy under these circumstances. The court's jurisdiction is not in dispute. See Burlington County Evergreen Park Mental Hosp. v. Cooper, 56 N.J. 579 (1970).
Bargaining demands are divided into three categories. They are either mandatory, voluntary or illegal subjects of negotiatons. N.L.R.B. Wooster Division, v. Borg-Warner Corp., 356 U.S. 342, 78 S.Ct. 718, 2 L.Ed.2d 823 (1958). There is an obligation on the part of the employer and the representatives of the employees to bargain with each other with respect to the terms and conditions of *282 employment and working conditions. The duty is limited to those subjects and that area. Neither party is legally obligated to yield. As to other matters, however, each party is free to bargain or not to bargain, and to agree or not to agree.
A supplement to the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-8.1, effective July 1, 1968, reads:
Nothing in this act shall be construed to annul or modify, or to preclude the renewal or continuation of any agreement heretofore entered into between any public employer and any employee organization, nor shall any provision hereof annul or modify any statute or statutes of this State. [Emphasis added]
County colleges are a creature of statute. Their maintenance, control and operation rests with the law responsible for their existence, N.J.S.A. 18A:64A-1 et seq. Among other provisions, a board of trustees shall be responsible for their management and control. N.J.S.A. 18A:64A-11. The general powers of the board of trustees is to determine the educational curriculum and program of the college. N.J.S.A. 18A:64A-12(d). The board of trustees appoints and fixes the compensation and term of office of the president of a college, who shall be the executive officer of the college and an ex officio member of the board of trustees, N.J.S.A. 18A:64A-12(e); makes and promulgates rules and regulations not inconsistent with the provisions of the statute or with the rules and regulations of the Board of Higher Education that are necessary and proper for the administration and operation of a county college and implements the provisions of the statute, and exercises all other powers, not inconsistent with the provisions of the statute or with the rules and regulations of the Board of Higher Education which may be reasonably necessary or incidental to the establishment, maintenance and operation of a county college. N.J.S.A. 18A:64A-12(o), (p).
*283 A "calendar" is defined as a system by which the beginning, length and division of the civil year are fixed and by which days and longer divisions of time (as weeks, months and years) are arranged in a definite order. A "curriculum" is defined as the whole body of courses by an educational institution or one of its branches, while a "program" is defined as a plan determining the offerings of an educational institution. See Webster's Third International Dictionary (1967). The words "educational curriculum and program" referred to in the Statute apparently are meant to refer to the same subject matter.
A calendar which determines when an employee shall commence work and the period he shall continue in the performance of his work would certainly seem to be within the term and conditions of employment. It is conceded by all parties that hours and wages are compulsory items for bargaining, and certainly hours and wages must be determined by the period of time such work must be performed. A curriculum which would appear to rest entirely with the board of trustees should not be confused with a calendar.
An argument broached by defendant institution is that to permit the calendar to be negotiated on a strict employer-employee relationship will result, in great measure, in a disregard of the best interests of those whom the college exists to serve, i.e. the students. There is no reason to conclude that the negotiation of the parties would eliminate any permissive participation by students. Similarly, there appears no logical reason to eliminate qualified faculty members from that discussion. Blocker, Plummer and Richardson in The Two Year College: A Social Synthesis (1965), wrote:
It must be pointed out that there are many individual faculty members who are interested and active in educational innovations and who develop  with or without encouragement from the administration  new concepts and procedures which improve and enrich the educational processes in their classrooms. Although these efforts may not be apparent to any other than those intimately related to the college, the significance of such work should not be underestimated. The impact *284 of these finite changes might, in the long run, stimulate major educational policy changes affecting the entire college. [at 109]
In Joint School District No. 8, City of Madison v. Wisconsin Employment Relations Board, etc., 37 Wis.2d 483, 155 N.W. 2d 78 (1967), the Wisconsin Supreme Court held that a school calendar was the subject of compulsory negotiations. The Wisconsin statute refers to the right to confer and to negotiate on the question of "wages, hours and conditions of employment." Our statute refers to "terms and conditions of employment of the employee"  hardly a distinction with a difference. The Wisconsin court went on to add that many items and restrictions in a school calendar required to be met by statute cannot be changed by negotiations. That court said:
The contents of the curriculum would be a different matter. Subjects of study are within the scope of basic educational policy and additionally are not related to wages, hours and conditions of employment.
As previously indicated, under the provisions of N.J.S.A. 18A:64A-12(o) and (p) the rules of the board of trustees are not to be inconsistent with the provisions of the statute or with the rules and regulations of the Board of Higher Education, and the board of trustees may exercise all other powers not inconsistent with the powers of this statute or with the rules of the Board of Higher Education which may be reasonably necessary or incidental to the establishment, maintenance and operation of a county college.
Nothing in the aforementioned statute refers to a calendar, while it does provide that the board of trustees has the power "to determine the educational curriculum and program of the college." It is conceded that the Board of Higher Education does not by its rules need to approve a calendar.
In Libby, McNeill & Libby v. Wisconsin Employment Relations Comm'n, 48 Wis.2d 272, 179 N.W.2d 805 (1970), the Wisconsin Supreme Court held that while the management *285 decision in that case was not a mandatory subject of collective bargaining, the decision and its "effects" were distinct issues, and concluded:
It is well established that where the employment relationship is threatened by a unilateral economic move by the employer, the Federal Courts and the National Labor Relations Board have found an enforceable duty to bargain over the impact of that decision on the employees. [Cited cases omitted; emphasis added]
The phrase "terms and conditions of employment" is no doubt susceptible of diverse interpretations. In common parlance the conditions of a person's employment are most obviously the various physical dimensions of his working environment. What one's hours are to be, what amount of work is expected during those hours, what periods of relief are available, would all seem "conditions" of one's employment. Fibreboard Paper Products Corp. v. N.L.R.B., 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964).
The board of trustees need not surrender its discretion in determining calendar policy nor come to an agreement in the collective bargaining sense. The board must, however, confer and negotiate, and this includes a consideration of the suggestions and reasons of the faculty representatives. There is no duty upon the board to agree against its judgment with the suggestions, and it is not a forbidden practice for the school board to determine in its own judgment what the school calendar should be even though such course of action rejects the faculty's wishes. The refusal may place the board in a position where, under the rule of the New Jersey Public Employment Relations Commission, it will result in the appointment of a mediator and, upon his failure to resolve the impasse, a fact-finding board. However, the fact-finders, if adverse to the board, are not binding upon it. The force of the fact-finding procedure is public opinion, and the legislative process thrives on such enlightenment in a democracy. Joint School District No. 8, City *286 of Madison v. Wisconsin Employment Relations Board, etc., supra; see also N.J.A.C. 19:12-1 to 19:12-15.
It is, therefore, concluded that an analysis of the facts and their application to N.J.S.A. 34:13A-1 et seq. and 18A:64A-1 et seq. requires that defendant board of trustees of the Burlington County College negotiate the format of the college calendar with plaintiff's representatives.