ASSEMBLY ORGANIZATION COMMITTEE Legislature
You request my opinion generally upon the authority of the state or a governmental subdivision thereof to provide a retirement plan for employes supplemental to or in lieu of the retirement systems established by the statutes. Specifically, you ask whether the Milwaukee Board of School Directors may establish such a retirement plan.
You state one of your two questions as follows:
 "Can the State or any governmental subdivision including counties, school districts, cities, towns, villages, and other public agencies provide for a separate retirement plan which is in addition to or in lieu of the retirement systems now established by statute by either a unilateral or contractual process because of the State Constitution or statutory provisions governing the determination in conditions of employment?"
Since the authority of the governmental entities specified differs markedly, each type of entity will be treated separately.
State
The state may, through legislation, change or establish retirement plans subject, however, to constitutional limitations. The constitutional limitations are set forth in Wis. Const. art. I, sec. 12 (prohibition of impairment of the obligation of contract), and Wis. Const. art. XI, sec. 3 (home rule authority for cities and villages). I will discuss the limitations in that order.
Wisconsin Constitution art. 1, sec. 12, states, in part:
 "No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed . . . ." (Emphasis added.)
This section limits the authority of the state to unilaterally change the terms of an existing contract unless the change is a necessary exercise of the police power, i.e., an exercise of sovereign power to protect the health and general welfare of the people. State Medical *Page 155 Society v. Comm. of Insurance, 70 Wis.2d 144, 159, 233 N.W.2d 470
(1975).
Employes generally have vested contractual rights in the statutory retirement systems, which rights may not, except as stated above, be abrogated by the Legislature. State Teachers'Retirement Board v. Giessel, 12 Wis.2d 5, 9, 106 N.W.2d 301
(1960), and cases cited therein at page 9.
Retirement benefits are "fringe benefits" subject to collective bargaining under sec. 111.91 (1)(c), Stats. Thus, the state may by contract with a state employes' union under secs. 111.80 thru111.97, Stats., provide an alternative or additional retirement plan for represented employes, subject to the legislative action required under sec. 111.92, Stats.
The Legislature can, via passage of new legislation, unilaterally change "fringe benefits" or any other term of employment not preserved by a collective bargaining agreement. Wisconsin Constitution art. 1, sec. 12, and U.S. Const. art. 1, sec. 10, however, preclude the Legislature from passing a law which impairs the obligation of such an existing contract. While I stated in 64 Op. Att'y Gen. 18, 19 (1975), that "the legislature can unilaterally increase pension benefits and costs to state employes in collective bargaining units with impunity," such statement was solely related to the question as to whether the Legislature could commit an unfair labor practice. Thereafter in the opinion I stated at pages 19 and 20:
 ". . . The legislature may not, however, impair the obligations of contracts. See Art. 1, sec. 10, U.S. Const.; Art. 1, sec. 12, Wis. Const. See also State ex rel. O'Neil v. Blied (1925), 188 Wis. 442, 446, 206 N.W. 213. Whether the legislature acted unconstitutionally as to a particular contract depends on the facts and circumstances of a specific case. See State ex rel. Bldg. Owners v. Adamany (1974), 64 Wis.2d 280, 294, 297, 219 N.W.2d 274."
Thus, the Legislature is limited in its alteration of retirement systems since a unilateral change of terms may constitute an impairment of the obligation of an existing contract. *Page 156 
Another limitation upon legislative action is the "home rule" authority granted to cities and villages by Wis. Const. art. XI, sec. 3. Such section states in part:
 "Cities and villages organized pursuant to state law are hereby empowered, to determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of state-wide concern as shall with uniformity affect every city or every village. The method of such determination shall be prescribed by the legislature. . . ."
Is the area of retirement systems a matter of statewide or of local concern? The Wisconsin Supreme Court has declared that the subject of pensions for teachers, policemen and firemen and county employes is a matter of statewide concern. State ex rel.Dudgeon v. Levitan, 181 Wis. 326, 193 N.W. 499 (1923); Barth v.Shorewood, 229 Wis. 151, 282 N.W. 89 (1938); Columbia County v.Wisconsin Retirement Fund, 17 Wis.2d 310, 116 N.W.2d 142 (1962). To the contrary, however, in State ex rel. Brelsford v.Retirement Board, 41 Wis.2d 77, 163 N.W.2d 153 (1968), the Wisconsin court held that certain modifications to the Milwaukee police pension program were a matter of local concern. The court stated at pages 86-87:
 "So here, it appears that although the broad area of police regulation is predominately a matter of statewide concern, nevertheless, the modification of the police pension program for cities of the first class — particularly where that modification merely enables retired policemen to receive their pensions while employed as schoolteachers or in other noncivil service jobs in Milwaukee — seems overwhelmingly to be a matter of predominate local concern. It would seem that the state would have little interest in whether a retired policeman taught school in Milwaukee or in some other municipality. This is a matter of unique interest to Milwaukee.
 "Appellant cites Columbia County v. Wisconsin Retirement Fund and Barth v. Shorewood to support the view that police pensions are a matter of statewide concern. However, in Barth this court was dealing with police and fire pensions for villages of 5,000 or more under sec. 61.65, Stats. The need for uniformity among such villages on such pension matters is *Page 157 
apparent; so, too, in Columbia was the need for uniformity in establishing county pension systems."
A declaration by the Legislature that an area is a matter of statewide concern is entitled to great weight because matters of public policy are primarily for the Legislature. But, the ultimate power to determine the matter is in the court. VanGilder v. Madison, 222 Wis. 58, 267 N.W. 25, 268 N.W. 108 (1936), pp. 73-74; State ex rel. Brelsford v. Retirement Board, supra, p. 82, 86. Thus, whether the subject of a proposed change in a retirement plan is a matter of local or of statewide concern can only be determined upon the facts and circumstances of a specific case.
Counties, Towns And School Districts
Counties, towns and school districts have only such powers as are expressly granted in the statutes or reasonably implied from the terms of the statute. See Dodge County v. Kaiser, 243 Wis. 551,11 N.W. 348 (1943), as to counties; Adamczyk v. Caledonia,52 Wis.2d 270, 190 N.W.2d 137 (1971), as to towns; and State exrel. Van Straten v. Milquet, 180 Wis. 109, 192 N.W. 392 (1923), as to school districts. The scope of power of these municipalities is synonymous with the general rule stated inState ex rel. Farrell v. Schubert, 52 Wis.2d 351, 190 N.W.2d 529
(1971). The court in Farrell set forth, at page 358, the scope of an administrative agency's implied power in these words:
 "This court has not had the occasion to determine the scope of an administrative agency's implied power under a statute. The rule in other jurisdictions is that "`. . . a power which is not expressed must be reasonably implied from the express terms of the statute; or, as otherwise stated, it must be such as is by fair implication and intendment incident to and included in the authority expressly conferred."' Consistent with this rule is the proposition that any reasonable doubt of the existence of an implied power of an administrative body should be resolved against the exercise of such authority."
See also Dodge County v. Kaiser, supra, p. 557; and Spaulding v.Wood County, 218 Wis. 224, 229, 260 N.W. 473 (1935). *Page 158 
The Wisconsin Constitution at art. IV, sec. 22, authorizes the Legislature to delegate certain "home rule" powers to counties. Such section reads:
 "POWERS OF COUNTY BOARDS. Section 22. The legislature may confer upon the boards of supervisors of the several counties of the state such powers of a local, legislative and administrative character as they shall from time to time prescribe."
The Legislature has provided limited "home rule" authority to Milwaukee County regarding its retirement system. See ch. 405, Laws of 1965, sec. 2, and 61 Op. Att'y Gen. 177 (1972). No such authority has been provided for counties other than Milwaukee.
Chapter 41 of the statutes establishes the Wisconsin Retirement Fund (WRF), the retirement program for state and local employes, except for teachers and employes of the city or county of Milwaukee. Chapter 42 of the statutes establishes the State Teachers Retirement System (STRS) covering teachers in the state except for those of the Milwaukee School District, and the Milwaukee Teachers Retirement System (MTRS) covering the Milwaukee teachers. Milwaukee County employes are covered by a separate retirement plan established by ch. 201, Laws of 1937.
Section 41.02 (4), Stats., defines "employer" to include a town, county or school district. Section 41.02 (5), Stats., defines "participating employer" as "any employer included within the provisions" of the fund. Section 41.05, Stats., sets forth those employers that are included within the fund either automatically or by election of the governing body. Counties, other than Milwaukee, are required to be "participating employers" of the WRF. Sec. 41.05 (9)(a)1., Stats. Towns and school districts (for nonteaching personnel), can elect to be under WRF. Sec. 41.05 (1), Stats. Teachers are mandatorily under either the STRS or MTRS. Ch. 42, Stats.
The Legislature has, therefore, provided a means by which counties, towns and school districts can provide pension plan membership for its officers and employes. Thus, the authority to provide an alternative or additional retirement plan cannot be said to exist "by fair implication and intendment" within the scope of the implied power of these governmental entities relating to hiring and *Page 159 
fixing of salaries, etc. See 39 Op. Att'y Gen. 314 (1950), and OAG 68-76 (unpublished opinion to Dr. Barbara Thompson, State Superintendent of Public Instruction, dated September 21, 1976).
Does the authority to provide an alternative or supplemental system arise through the statutes relating to "collective bargaining?" Subchapter IV of ch. 111, Stats., establishes the right of municipal employes and employers to confer and negotiate concerning "wages, hours and conditions of employment" and to reduce such negotiations to a binding contract. Subsection 111.70
(2), Stats., provides:
 "Rights of municipal employes. Municipal employes shall have the right of self-organization, and the right to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in lawful, concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . .'
Collective bargaining is defined in sec. 111.70 (1)(d), Stats., as:
 "`Collective bargaining' means the performance of the mutual obligation of a municipal employer, through its officers and agents, and the representatives of its employes, to meet and confer at reasonable times, in good faith, with respect to wages, hours and conditions of employment with the intention of reaching an agreement, or to resolve questions arising under such an agreement. . . ." (Emphasis added.)
63 Op. Att'y Gen. 16, 20 (1974) stated:
 ". . . school boards have authority to include in contracts with teachers an increment in return for choosing early retirement. Such authority exists regardless of whether the contract is or is not the result of collective bargaining."
This result was based largely upon the duty of the school board, under sec. 118.21, Stats., to "contract in writing with qualified teachers." 63 Op. Att'y Gen. 16 (1974), at p. 18. Since the duty to bargain collectively imposes on municipal employers the obligation, and therefore the power, to bargain over retirement systems, municipal employers may do so in a way which modifies existing statutory schemes except where those statutory schemes by their own terms are mandatory and not subject to waiver through bargaining. Cf. Joint School Dist. No. 8 v. Wis. E.R.Board, 37 Wis.2d 483, 492, *Page 160 155 N.W.2d 78 (1967) ("These items determined by statute, of course, cannot be changed by negotiation. But what is left to the school boards . . . is subject to compulsory discussion and negotiation."). Also see Board of Education v. WERC, 52 Wis.2d 625,640, 191 N.W.2d 242 (1971).
Retirement plans, their management and administration, and employer and employe contributions to such plans have long been held to be mandatory subjects of collective bargaining as coming within the terms of "wages" and "conditions of employment."Inland Steel Co. v. National Labor Relations Board, 170 F.2d 247
(7th Cir. 1948). Retirement plans are proper subjects for bargaining under sec. 111.70, Stats., within the broad interpretation of "wages, hours and conditions of employment" set forth in Muskego-Norway C.S.J.S.D. No. 9 v. W.E.R.B., 35 Wis.2d 540,151 N.W.2d 617 (1967), and Joint School Dist. No. 8 v. Wis.E.R. Board, 37 Wis.2d 483, 155 N.W.2d 78 (1967). The conclusion follows then that a supplemental retirement plan is a proper subject of collective bargaining under sec. 111.70, Stats., and thus a proper element of the resulting contract unless prohibited by statute. Beloit Education Asso. v. WERC, 73 Wis.2d 43,242 N.W.2d 231 (1976). I find no statutory prohibition against bargaining and contracting for a supplemental retirement plan.
Cities And Villages
A city or village (except the City of Milwaukee), becomes a participant in the WRF by electing to be included in the fund. Sec. 41.05, Stats. The only city and village employes mandatorily under the fund are police officers and fire fighters. Secs. 61.65
(6) and (7), 62.13 (9)(e), (9a), (10)(f) and (g), Stats. The City of Milwaukee, excluded from the WRF by sec. 41.05 (1), Stats., has a separate retirement system under ch. 396, Laws of 1937. Once a city elects, under sec. 41.05, Stats., to participate in the WRF, such election is irrevocable since there is nothing in ch. 41 authorizing a participant to discontinue. Where a city or village has elected participation in the WRF, its authority to provide a supplemental plan arises from "home rule" or the duty to bargain collectively under subch. IV of ch. 111, Stats.
Cities and villages have "home rule" power under Wis. Const. art. XI, sec. 3, in matters of local concern. Whether a subject of *Page 161 
legislation is of a predominate statewide or local concern is a policy area to be weighed and initially declared by the Legislature. This declaration of policy is then given great weight by the court if the court is required to make the ultimate determination as to whether the matter is of statewide or of local concern. See State ex rel. Brelsford v. Retirement Board,supra, p. 86. Brelsford further indicates to me that the local or statewide concern question should only be handled on the basis of a fact situation brought into being by a specific retirement plan or legislation.
You ask in your other question:
 "Can the Milwaukee Board of School Directors and/or the Administrators and Supervisors Council establish a new retirement fund which is in addition or in lieu of coverage under the Milwaukee Teachers Retirement Fund by either a unilateral action or by contractual process?"
The Milwaukee School Board is an independent public body charged with the management, control or supervision of the public schools in the city. State ex rel. Roelvink v. Zeidler, 268 Wis. 34,37, 66 N.W.2d 652 (1954). Sec. 119.04, Stats., provides:
 ". . . The board and the schools in cities of the 1st class shall be governed in all matters by the general laws of the state, except as altered or modified by express amendments."
The independence of the school board from the city is, however, not complete. The city provides the money and owns the physical property of the school system. Secs. 119.16 (3) (b) and 119.46, Stats. Section 119.12 (2), Stats., provides for an action against the board, but sec. 119.68, Stats., provides that any such claims arising out of the operation of the schools are brought as claims against the city. The city attorney is ex officio the attorney for the board. Sec. 119.10 (b), Stats. All contracts are required to be made in the name of the city. Sec. 119.52 (5)(a), Stats.
The Milwaukee School Board is, however, independent of the city in the area of hiring and compensation of employes eligible for the Milwaukee Teachers Retirement Fund (MTRF). Secs. 119.18 (1) and (10) and 119.40, Stats. Thus, at least in this respect, the general rules as to the authority of school districts apply. *Page 162 
It has long been established in this state that school districts are quasi-municipal corporations acting as the state's agent for the purpose of administering the state's system of public education. Zawerschnik v. Joint County School Comm.,271 Wis. 416, 429, 73 N.W.2d 566 (1955). A district has only those powers expressly given to it by statute or implied as necessary to execute those powers expressly given. State ex rel. VanStraten v. Milquet, supra; 29 Op. Att'y Gen. 96 (1940). This statement of the scope of the school district's power is in accord with the general rule stated in State ex rel. Farrell v.Schubert, supra, holding that state agencies have only those powers expressly granted or necessarily implied within the statutes under which the agency proceeds.
Section 119.18 (10), Stats., specifically authorizes and requires utilization of the MTRF for teaching personnel. Such section states:
 "Employes. (a) The board may determine the qualifications of all persons in its employ who are eligible to membership in the teachers retirement fund established and maintained in the city."
The Milwaukee Teachers Retirement Fund, created and covered by secs. 42.70 through 42.96, Stats., is the only teachers retirement fund specifically authorized for teaching personnel in Milwaukee. "Teacher" is therein broadly defined to include superintendents, principals, supervisors, etc. Sec. 42.70 (2)(q)1., Stats.
The Legislature has thus provided a specific retirement plan for Milwaukee "teachers" and required the school board to implement membership of such teachers in the retirement plan, the MTRF. I find no other statute authorizing the Milwaukee School Board to provide retirement participation or an alternative retirement plan for "teachers." There is no indication of legislative intent to authorize an alternative plan. Moreover, the fact that the Legislature has provided an exclusive plan for Milwaukee "teachers" negates any argument that there is implied authority to establish a different retirement system.
One question then remains. Does the Milwaukee School Board have the authority to provide a retirement system supplementary to the MTRF by virtue of a collective bargaining agreement authorized by subch. IV of ch. 111, Stats.? It is my opinion that the Milwaukee School Board does have the duty and authority under ch. 111, Stats., *Page 163 
to bargain on the subject of a supplementary retirement system and the similar authority to implement such supplementary retirement system if it becomes part of a collective bargaining agreement. What I said above concerning the duty of counties, towns and school districts to bargain on retirement plans is applicable here.
Section 42.70 (1), Stats., states in part:
 ". . . A teachers retirement fund is created in each city of the 1st class. . . ."
Section 42.80, Stats., requires the deduction of employe contributions from the salary of "teachers" as defined in sec. 42.70 (2) (q) 1., Stats. The Milwaukee School Board is authorized by sec. 119.18 (10) (a), Stats., to determine, within the statutory definition of "teacher," those persons eligible to membership. All persons so determined to be eligible for participation in the MTRF are required to be members. Secs. 42.70 and 42.80, Stats. Do the statutes providing this mandatory MTRF coverage constitute a prohibition against bargaining and contracting for a supplementary retirement benefit? In my opinion they do not. The statutes do not by plain language prohibit such a supplemental retirement system, nor do I see a prohibition by implication. The basic legislative purpose for establishing the MTRF was to provide an adequate retirement for teachers in cities of the first class. This purpose is not clearly inconsistent with establishment of supplemental benefits through collective bargaining. It is, therefore, my opinion that sec. 111.70, Stats., authorizes the Milwaukee School Board to negotiate and contract for a retirement system supplementary to that established under subch. 11 of ch. 42, Stats.
BCL:WMS *Page 164