ANTHONY S. EARL, Secretary Department of Administration
You have asked for my opinion on the following questions:
1. Would the legislature commit an unfair labor practice if it unilaterally increased the pension benefits and costs to state employes in collective bargaining units?
2. Would an act of the legislature increasing such pension benefits and costs apply to state employes within collective bargaining units as well as to those without?
3. Is the removal from the state retirement system or the cessation of all contributions subject to the duty to bargain collectively?
4. Would the Group Insurance Board commit an unfair labor practice if it unilaterally increased benefits and costs to state employes in collective bargaining units? *Page 19 
5. Would such increases by the Group Insurance Board apply to state employes within collective bargaining units as well as to those without?
6. Is removal of a bargaining unit from the provisions of ch. 40, Stats., subject to the duty to bargain collectively?
I.
It is my opinion that the legislature would not commit an unfair labor practice if it unilaterally increased the pension benefits and costs to state employes in collective bargaining units.
The State Employment Labor Relations Act (SELRA), secs.111.80-111.97, Stats., requires the state to bargain collectively about certain subjects with the representative of a majority of its employes in an appropriate collective bargaining unit. See sec. 111.84 (1) (d), Stats. The coverage, scope and content of health insurance and retirement are among those subjects. See sec. 111.91 (1) and (1) (c), Stats. As a general rule, an employer cannot unilaterally, i.e., without bargaining, change something which is subject to the duty to bargain collectively. See NLRB v.Katz (1962), 369 U.S. 736, 743, 82 S.Ct. 1107, 8 L.Ed.2d 230.
A statutory change in such benefits, however, would not violate the duty to bargain collectively. There is no constitutional right or duty to bargain collectively. See Federation v. HanoverSchool Corp. (7th Cir. 1972), 457 F.2d 456, and Atkins v. City ofCharlotte (3 judge court, W.D. N.C. 1969), 296 F. Supp. 1068,1077. The right and duty exist by statute. Although statutes may violate the constitution, they cannot violate other statutes. The earlier act at most is impliedly repealed by the inconsistent, later act. See Abdella v. Abdella (1954), 268 Wis. 127, 130,66 N.W.2d 689, and State ex rel. Badtke v. School Board (1957),1 Wis.2d 208, 214, 83 N.W.2d 724.
Therefore, the legislature can unilaterally increase pension benefits and costs to state employes in collective bargaining units with impunity.
This conclusion equally applies to the legislature's power to reduce benefits or costs. The legislature may not, however, impair the obligations of contracts. See Art. I, sec. 10, U.S. Const.; Art. I, sec. 12, Wis. Const. See also State ex rel.O'Neil v. Blied *Page 20 
(1925), 188 Wis. 442, 446, 206 N.W. 213. Whether the legislature acted unconstitutionally as to a particular contract depends on the facts and circumstances of a specific case. See State ex rel.Bldg. Owners v. Adamany (1974), 64 Wis.2d 280, 294, 297,219 N.W.2d 274.
By an act of the "legislature" I mean a sovereign act through a bill passed by the senate and assembly and signed by the governor. See Art. V, sec. 10, Wis. Const. This sovereign power cannot be surrendered. See 16 C.J.S., Constitutional Law, sec. 179, p. 913, and McKenna v. State Highway Comm. (1965), 28 Wis.2d 179,185-186, 135 N.W.2d 827. Therefore, I cannot accept the argument that SELRA gives state employes a property right in collective bargaining which subsequently cannot be abolished. SeeState ex rel. Anderson v. Barlow (1940), 235 Wis. 169, 182-183,292 N.W. 290, and State ex rel McKenna v. District No. 8 (1943), 243 N.W. 324, 327, 10 N.W.2d 155.
II.
It is my opinion that a statute unilaterally increasing pension benefits and costs to state employes would apply to state employes in collective bargaining units only if the act so provided expressly or by necessary implication. Such an act would be inconsistent with the state's duty under SELRA to bargain collectively about such increases, and inconsistent statutes are to be harmonized if possible to avoid repeals by implication. SeeKramer v. Hayward (1973), 57 Wis.2d 302, 311, 203 N W. 2d 871.
Such a statute could be harmonized with SELRA if the former is construed to apply only to those state employes with whom the state has no duty to bargain collectively. If the statute stated, expressly or by necessary implication, that it applied to employes within collective bargaining units, then it would so apply and SELRA would impliedly have been repealed to the extent of the inconsistency.
III.
It is my opinion that the removal from the state retirement system or the cessation of all contributions is subject to the duty to bargain collectively. *Page 21 
Section 111.91 (2) (C), Stats., provides that amendments to SELRA are prohibited as a subject of bargaining. Section 111.92
(1), Stats., however, provides in part:
 "Tentative agreements reached between the department of administration, acting for the executive branch, and any certified labor organization shall, after official ratification by the union, be submitted to the joint committee on employment relations . . . . If the committee approves the tentative agreement, it shall introduce in companion bills, to be put on the calendar, that portion of the tentative agreement which requires legislative action for implementation, such as salary and wage adjustments, changes in fringe benefits, and and proposed amendments, deletions or additions to existing law . . ." (Emphasis added.)
Section 111.92 (1), Stats., cannot narrowly be construed as authorizing the committee to make recommendations for changes in the law but as withholding from employes the right to bargain about them. First, such a construction is difficult to reconcile with the overall function of this subsection to have the committee act on an existing agreement proposal. Second. sec.111.91 (2) (c), Stats., says only that changes in SELRA are prohibited as subjects of bargaining. The principle expressiounius est exclusio alterius militates against such a narrow construction. See Columbia Hospital Asso. v. Milwaukee (1967),35 Wis.2d 660, 669, 151 N.W.2d 750. Third, the proximity within sec. 111.92 (1), Stats., of "fringe benefits" and the provision for recommending amendments to "existing law" strongly suggests that the legislature anticipated that collective bargaining might produce a need for changes in other laws concerning fringe benefits, such as pension rights. Fourth, see. 111.91 (1), Stats., expressly states that fringe benefits are among the subjects of collective bargaining without limitation to those not covered by law.
IV
It is my opinion that the Group Insurance Board would commit an unfair labor practice if it unilaterally increased benefits and costs to state employes in collective bargaining units.
The Group Insurance Board, hereafter "board," is given administrative powers by sec. 40.10, Stats relative to group life *Page 22 
and health insurance. The board has only such powers as are expressly granted to it or necessarily implied therein, and any power sought to be exercised must be found within the four corners of the statute under which it proceeds. See State ex rel.Farrell v. Schubert (1971), 52 Wis.2d 351, 357, 190 N.W.2d 529,vacated on other grounds, 408 U.S. 915, 92 S.Ct. 2500,33 L.Ed.2d 327. The powers in ch. 40, Stats., must be harmonized with the state's duty under SELRA not to unilaterally change benefits. Since SELRA was passed later in time, it must be treated as modifying prior statutes and may not be given a restrictive interpretation. See Muskego-Norway C.S.J.S.D. No. 9 v. WERB
(1967), 35 Wis.2d 540, 555-558, 151 N.W.2d 617, and Joint SchoolDistrict No. 8. v. Wis. E.R. Board (1967), 37 Wis.2d 483, 494,155 N.W.2d 78. Therefore, the board is without power to increase costs and benefits unilaterally as to state employes in collective bargaining units.
The board is not immune from the inhibitions of SELRA even though the state, rather than the board, is therein expressly named as the employer. First, such a conclusion clashes with the duty of any agency to construe its own powers in harmony with the statutory responsibilities of other units of government. SeeBoard of Education v. WERC (1971), 52 Wis.2d 625, 640,191 N.W.2d 242.
Second, such conclusion improperly bifurcates the state. The state as an employer is subject to SELRA. See sec. 111.80 (4) and (16), Stats. The department of administration represents the "executive branch" of the state. See sec. 111.92 (1), Stats. The board itself is part of the executive branch. See secs. 15.161 (2) and 15.165 (2), Stats. Thus, the board is no less bound by SELRA than is the department of administration.
Third, the executive branch of government cannot violate the duly passed laws of the sovereign See United States v. Nixon
(1974), 418 U.S. 683, 94 S.Ct. 3090, 3101-3102, 41 L.Ed.2d 1039, and Ekern v. McGovern (1913), 154 Wis. 157, 208, 142 N.W. 595.
The agency charged with enforcement of the law may proceed against any "person" disobeying its orders. See secs. 111.84 (4) and 111.07 (7), Stats. Under SELRA unfair labor practices are committed by "an" employer. Sec. 111.84 (1), Stats. The *Page 23 
respective agencies of state government have "management" rights. See sec. 111.90, Stats. Thus, the legislature has recognized that although the state is the ultimate employer, the various agencies of the state function as "an" employer in differing circumstances and are "persons" subject to SELRA.
Therefore, such a unilateral increase by the board would be an unfair labor practice within the meaning of SELRA.
Of course, a bargaining unit is free to accept unilateral changes since the duty to bargain is waivable. See C C PlywoodCorp. (1964), 148 NLRB No. 46, 57 LRRM 1015, 1016-17, 1964 CCH NLRB par. 13, 358, aff'd (1967), 385 U.S. 421, 87 S.Ct. 559,17 L.Ed.2d 486. Moreover, it is conceivable that certain labor agreements create such a waiver by their terms. Bargaining units must submit their proposals a year in advance, see sec. 111.91
(1) (c), Stats., and whether a failure to meet this requirement together with certain contract language or acceptance of unilateral changes constitutes such a waiver must await a proper determination on the facts of a particular case.
V.
For the reasons given in IV., supra, it is my opinion that such unilateral increases by the board could not apply to state employes in collective bargaining units.
In addition, sec. 111.93 (3), Stats., provides that the terms of a labor agreement supersede civil service "and other applicable statutes related to wages, hours and conditions of employment." It hardly can be doubted that such fringe benefits relate to wages, hours and conditions of employment. See OAG 6-74 (January 28, 1974). Thus, it would be contradictory to say that such board increases could be extended to bargaining unit employes when the labor agreement in respect thereto would supersede the very terms so extended.
It cannot successfully be argued that the collective agreement does not supersede the statutes empowering the board to establish benefits and costs on the ground that sec. 111.93 (3), Stats., mentions only wages and not fringe benefits whereas secs. 111.91
(1) and 111.92 (1), Stats., set wages apart from fringe benefits. Such a contention misses the significance of the provision in sec. 111.91 (1), Stats., that fringe benefits are bargainable. For the *Page 24 
duty to bargain requires the parties to meet with the intention of reaching an agreement on bargainable subjects and to reduce their agreement to writing. See see. 111.81 (2), Stats. The state hardly could be required to intend to reach agreement on fringe benefits and to reduce any agreement to writing if, through another agency, it could void those terms unilaterally Thus, the express mention of fringe benefits in secs. 111.91 (1) and 111.92
(1), Stats., more reasonably is explained as the legislature's effort to be clear that fringe benefits are subject to the collective bargaining process.
VI.
For the reasons given in III., supra, it is my opinion that the removal of a bargaining unit from the provisions of ch. 40, Stats., is a subject of collective bargaining.
BCL:CDH